## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 24-3

(District Court No. 3:24-cv-5072-JDA)

| | |
|---|---|
| FREDDIE EUGENE OWENS | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| BRYAN P. STIRLING, in his official capacity as the Director of the South Carolina Department of Corrections, | ) ) ) |
| | ) |
| SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, | ) ) |
| | ) |
| Defendants-Appellees, | ) |
| | ) |
| and | ) |
| | ) |
| HENRY DARGAN McMASTER, in his official capacity as Governor of the State of South Carolina, | ) ) ) |
| | ) |
| Intervenor-Defendant-Appellee. | ) |
| _____ | ) |

**CAPITAL CASE**

Execution of Appellant Owens scheduled for
September 20, 2024, 6 p.m.

**PLAINTIFF-APPELLANT OWENS'S EMERGENCY MOTION FOR AN
ADMINISTRATIVE INJUNCTION AND INJUNCTION PENDING APPEAL**

1

Plaintiff-Appellant Owens seeks an emergency injunction pending appeal of the district court's denial of a preliminary injunction and temporary restraining order. *See* DE 19 (district court order).[1] Because Defendants plan to execute Owens tomorrow, on September 20, 2024, Owens needs immediate injunctive relief so that his death sentence is not carried out despite Defendants' denying him, in violation of due process, basic information about the lethal injection drugs and qualifications of the execution team. Owens also requests an immediate administrative injunction so this Court may decide this matter before the State executes him.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over appeals from "interlocutory orders of the district courts of the United States . . . refusing . . . injunctions." 28 U.S.C. § 1292. This motion is brought under Fed. R. App. P. 8(a)(2) because the district court erred in denying Owens's request for a preliminary injunction and declaratory judgment, and moreover, seeking any additional relief in the district court would be impracticable at this time, with only a day remaining until Owens's execution.

## BACKGROUND

South Carolina's execution statute provides that a death-sentenced prisoner will be executed by electrocution unless they affirmatively elect another of two statutorily authorized methods: the firing squad and lethal injection. S.C. Code § 24-3-530. The Supreme Court of South Carolina has held that the purpose of "the choice provisions of section § 24-3-530" is to ensure that "a condemned inmate in South Carolina will never be subjected to execution by a

---

[1] "DE" references the docket entries in the district court. For the Court's convenience, Owens has also filed with this Court all exhibits submitted in the district court, and the district court's order.

method he contends is more inhumane than another method that is available." *Owens v. Stirling*, 904 S.E.2d 580, 608 (S.C. 2024).

Another provision of South Carolina law establishes a veil of secrecy around certain aspects of the execution process, prohibiting the disclosure of identifying information of "any person or entity that participates in the planning or administration of the execution of a death sentence, including any person or entity that prescribes, compounds, tests, uses, manufactures, imports, transports, distributes, supplies, prepares, or administers the drugs, medical supplies, or medical equipment utilized in the execution of a death sentence . . . . in any administrative, civil, or criminal proceeding in the courts, administrative agencies, boards, commissions, legislative bodies, or quasilegislative bodies of this State, or in any other similar body that exercises any part of the sovereignty of the State." S.C. Code § 24-3-580(A)(1), (B).

In advance of an execution, the South Carolina execution statute further states that, upon receiving a notice of execution, the director of the South Carolina Department of Corrections must "determine and certify by affidavit under penalty of perjury to the Supreme Court whether the methods [of execution] provided" by the state's capital punishment statute—electrocution, the firing squad, and lethal injection—"are available." S.C. Code § 24-3-530(B).

As to lethal injection, the state supreme court has held that the director's certification must set forth the "process that he decides is appropriate for satisfying himself that the drugs are capable of carrying out the death sentence according to law . . . in sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution." *Owens*, 904 S.E.2d. at 605. While ordering the director to comply with the secrecy statute described above, the court held that "the text of subsection 24-3-530(B) itself," the execution statute, requires the director to disclose "some

basic facts about the drug's creation, quality, and reliability" and "the drugs' potency, purity, and stability." The court noted that there is also "a Due Process Clause component to our analysis of this claim[.]" *Id.* at 604.

On August 23, 2024, the South Carolina Supreme Court issued an execution notice, setting Owens's execution by the South Carolina Department of Corrections for September 20, 2024. On August 28, 2024, Corrections Director Stirling submitted a certification to that court, pursuant to S.C. Code § 24-3-530(B), stating that he had obtained pentobarbital for use in lethal injections. Defendant Stirling also stated in his certification that the pentobarbital is of sufficient potency, purity, and stability to carry out executions, claiming that the forensic laboratory of the S.C. Law Enforcement Division had tested and approved the pentobarbital. Stirling provided no information about the nature or results of those tests. DE 1-3.

Plaintiff-Appellant Owens followed up on Stirling's limited certification by submitting an objection and request for additional information about the execution drugs to the state supreme court, attaching an affidavit from a pharmacy expert explaining why the information sought was needed for Owens to make an informed assessment about which method of execution would be the least inhumane. DE 1-5, 1-6. Importantly, and as addressed below, Plaintiff Owens only sought information about the testing and properties of the drugs. He did not ask for information that would identify any person involved in the execution process, or violate the plain terms of South Carolina's secrecy law prohibiting disclosure of such matters. The state supreme court denied Owens's request. DE 1-7.

Owens and five death-sentenced and warrant-eligible prisoners then filed suit in the district court, seeking protection of their federal constitutional rights to a reasonable degree of information about the manner in which the State of South Carolina intends to execute them.

Owens separately moved for a preliminary injunction and temporary restraining order. On September 18, 2024, the district court denied his motion. DE 19. This timely, emergency motion follows.

## ARGUMENT

This matter comes to the Court on review of the district court's denial of a motion for preliminary injunction, which the district court construed as a request for a temporary restraining order. Appellate review of such a denial is conducted under an abuse of discretion standard. The court reviews legal conclusions de novo and factual findings for clear error. *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The district court issued only legal conclusions, and did not hold a hearing or make any factual findings. As such, the Court's review in this case is de novo, under which the Court may consider the issues anew and reach its own conclusions independent from those of the district court. *See Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239, 246 (4th Cir. 2009) ("de novo review entails consideration of an issue as if it had not been decided previously.") (citation omitted).

**I.      The district court engaged in a selective reading of state law when it found that Plaintiff Owens lacks the liberty interest necessary to bring a procedural due process claim.**

The procedural due process claim on which Owens's preliminary injunction motion rests requires the existence of a state-conferred liberty interest. If such an interest is present, then the federal courts may review a procedural due process claim that state authorities have arbitrarily revoked it or insufficiently protected the plaintiff's legitimate interest in the vindication of that right. *See Desper v. Clarke*, 1 F.4th 236 (4th Cir. 2021) (state rule creates a protected liberty interest when it establishes an "objective expectation . . . in such a way that an inmate could

reasonably expect to enforce it against prison officials.") (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 465 (1989)).

The district court's principal basis for denying Owens an injunction was that it was "not persuaded that South Carolina has created a liberty interest as broad as Owens claims." DE 19, p. 13. The district court describes Owens's state-conferred right as "the right to choose his method of execution—period, not the right to discover what is, objectively, the best choice, nor the right to discover whether the execution methods are constitutional." *Id.* at 16. To see how this is an inaccurate reading of the state court's decision in *Owens v. Stirling*, 904 S.E.2d 580 (S.C. 2024), explaining the execution statute, this Court should turn to what the state court actually said.

At the outset, it is evident that the state right is not, as the district court would have it, merely a right to choose the method of execution. The state supreme court made it clear it is also a right to be informed:

> [The Director] *must explain* to the condemned inmate and other parties legally entitled to the explanation the results of his efforts . . . . If the Director does obtain the drugs . . . the Director *must explain to those legally entitled to the explanation the basis of his determination* that the drugs are of sufficient "potency, purity, and stability" to carry out their intended purpose.

904 S.E.2d at 604 (emphasis added).

The state supreme court continued:

> The text of section 24-3-530 requires nothing more than that the Director set forth that process *in sufficient detail that a condemned inmate and his attorneys may understand* whether there is a basis for challenging the constitutionality of the impending execution.

*Id.* at 605 (emphasis added).

The court then concluded:

> [The Director] *must explain* in the affidavit how he determined the drugs were of sufficient "potency, purity, and stability" to carry out their intended purpose.

*Id.* (emphasis added).

It is impossible to reconcile these plain and explicit requirements with the district court's assertion that all Owens is entitled to under state law is "the right to choose his method of execution—period."

The district court next collapsed the question of whether a state right existed, and the question of whether the State's protection of that right comported with procedural due process, into a single inquiry. The district court stated that "the state supreme court determined what information the Death Penalty Statute requires the Director to provide regarding the drugs to be used in a lethal-injection execution . . . and then the court specifically decided—in overruling Owens's objections—that Stirling has provided Owens all of the information that the Statute requires . . . ." DE 19, p. 14.

This approach, if affirmed, would lead to absurd results. Imagine the SCDC director certified that he was satisfied that the drugs were lethal and would quickly bring about Owens's death but told him nothing more. If the state court accepted that certification, would that adequately protect Owens's right to "basic facts" about the drugs? Or what if the SCDC director certified that the drugs would do their job painlessly because he observed them being tested on an animal? As these examples illustrate, the question of whether a state is adequately, or arbitrarily, implementing its own legislatively or judicially-conferred rights is not wholly the province of state authorities to answer. It is also the province of federal courts who are asked to review whether states have established rights but arbitrarily failed to honor them. Were the district court's approach left standing, it would allow state authorities to completely foreclose the

possibility of procedural due process protections simply by applying state-based rights in whatever manner they wish. That cannot be the law.

The U.S. Supreme Court itself has rejected the reasoning that the district court implicitly adopted. In *Hicks v. Oklahoma*, 447 U.S. 343 (1980), a defendant was given a mandatory sentence for habitual offenders that was found unconstitutional in another case, by a state appellate court, after his trial. Yet in the defendant's appeal, the state court declined to vacate his now-unconstitutional sentence, reasoning that the mandatory 40-year sentence was still within the range of punishment even If the sentence was not mandatory. The U.S. Supreme Court reversed, holding that this amounted to an arbitrary due process violation. The Court went on to squarely reject the notion adopted here by the district court, that state courts are the sole arbiters of the scope of state rights:

> It is argued that all that is involved in this case is the denial of a procedural right of exclusively state concern. Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, *it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law . . . . that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.*

447 U.S. at 346 (emphasis added). Then, having clarified the role of federal review in policing a state's protection of its own rights, the Court concluded: "Such an arbitrary disregard of the petitioner's [state] right to liberty is a denial of due process of law." *Id.*

Thus, in this case, the state supreme court's approval of Director Stirling's superficial certification about the execution drugs does not answer the procedural due process question; it only begins it. It is now the federal courts' role to conduct the procedural due process analysis, balance the competing equities, and determine what process (in this case, what information) was actually due to Owens.

8

II.     **The district court failed to acknowledge that Defendants' refusal to provide basic information about the execution drugs undermines Plaintiff Owens's ability to make an informed choice about his method of execution.**

In support of his showing that Stirling and the state supreme court frustrated his state-based liberty interest in meaningful information about the execution drugs, Owens submitted an affidavit from a pharmacy expert—Dr. Michaela Almgren, Pharm.D., MS, a Clinical Associate Professor in the Department of Clinical Pharmacy and Outcome Sciences at the University of South Carolina College of Pharmacy—that relevant information was omitted from Stirling's certification. DE 1-6.

The district court believed that Dr. Almgren's affidavit "do[es] not somehow create a *liberty interest* in Owens receiving the information." DE 19, p. 16 (emphasis in original). But here again, the district court conflated the question of whether a liberty interest *exists*, with the separate question of whether state authorities have arbitrarily abrogated that interest. At a minimum, Dr. Almgren's affidavit creates a factual dispute, requiring a hearing, as to whether Director Stirling's and the state supreme court's application of the certification requirement amounts to an arbitrary revocation of Owens's statutory right to an explanation about the execution drugs, an explanation that would allow him to meaningfully choose his execution method and assess potential Eighth Amendment problems.

Plaintiff Owens asked for the following information, which he needs to make an informed choice about whether lethal injection will be a less inhumane method of execution than other available methods:

P.     The date on which the drugs were tested.

b.     The Beyond Use Date, after which compounded drugs should not be used.

c.     If the drugs were commercially manufactured, the expiration date.

      d.      The methods and procedures used to test the pentobarbital, including documentation of test method validation and details of quality control procedures and methodology.

      e.      The actual results obtained from the testing.

      f.      Where the drugs will be stored prior to their use, and how the storage conditions will be monitored, including temperature and humidity controls.

*See* DE 1-6 (Affidavit of Dr. Almgren).

Dr. Almgren explains in her affidavit that if the pentobarbital used during an execution is expired; past its Beyond Use Date; improperly tested in a way that fails to detect problems with the drug's potency, purity, or stability; or improperly stored in a way that degrades the drug's properties; then serious risks are posed to the person undergoing the execution process. In the absence of this information, there are risks of "extensive damage to the blood vessels and surrounding tissue," "intense pain upon injection," and potentially "a prisoner regaining consciousness, perhaps with organ or brain damage from oxygen deficits suffered during the attempt at execution." This information, from a highly qualified expert, is more than enough to demonstrate that Plaintiffs, and Owens at this juncture, have not been given sufficient information to meaningfully decide which method of execution "will cause [them] the least pain," as state law requires. At a minimum, Owens has demonstrated that he is entitled to an evidentiary hearing on the question of whether state authorities have arbitrarily, and unconstitutionally, denied his liberty interest in meaningful information about the execution drugs.

## III.    Plaintiffs' due process claim is not barred by the *Rooker-Feldman* doctrine.

As an alternative ground for denying relief, the district court also believed that it lacked jurisdiction over Owens's procedural due process claim under the *Rooker-Feldman* doctrine. DE 19, pp. 14-15. This too was error.

There exists a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Under the *Rooker-Feldman* doctrine, federal courts only lack jurisdiction in the limited circumstance of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Consistent with this narrow articulation of the *Rooker–Feldman* doctrine, the Supreme Court has also recognized that state administrative and executive actions are not covered by the doctrine." *Thana v. Bd. of License Commissioners for Charles Cnty., Maryland*, 827 F.3d 314, 320 (4th Cir. 2016). This doctrine has a "narrow scope" and "is confined to cases of the kind from which the doctrine acquired its name . . . ." *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (internal citation omitted). Contrary to the district court's conclusion, *see* DE 19, pp. 14-15, the Defendants here did not thread that needle, and *Rooker-Feldman* does not apply.

### A.    The state action that Owens challenges was administrative, not a state court judgment.

*Rooker-Feldman* only applies when a state court renders a judgment. *Hulsey*, 947 F.3d at 250. ("the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments."). A judgment is a "court or other tribunal's final determination of the rights and obligations of the parties in a case." JUDGMENT, Black's Law Dictionary (12th ed. 2024). What the state court issued here was not a judgment rendering it subject to appeal only under 28 U.S.C. § 1257(a), but merely an administrative function required under state law, rendering challenges to this function subject to broad federal question jurisdiction under 28 U.S.C. § 1331.

The information Director Stirling provided to the state supreme court was not part of the issues litigated in the state trial court, nor was it part of the appeal resulting in the *Owens* decision. Instead, Stirling provided information pursuant to his duty under § 24-3-530(B) to "determine and certify by affidavit under penalty of perjury to the Supreme Court whether the methods [of execution] are available." The fact that Owens submitted an objection to Stirling's certification did not somehow transform this administrative certification function into an adversarial proceeding resulting in a judgment. *See e.g. Van Hoven v. Buckles*, 947 F.3d 889, 892-93 (6th Cir. 2020) ("The writ that comes out of this ministerial process is not a state court judgment [for *Rooker-Feldman* purposes] any more than a summons or complaint is a state court judgment."). "State administrative decisions, even those that are subject to judicial review by state courts, are beyond doubt subject to challenge in an independent federal action commenced under jurisdiction explicitly conferred by Congress." *Thana*, 827 F.3d at 321.

**B.      There was no state court decision on the federal due process issue that Owens has raised in his § 1983 suit.**

*Rooker-Feldman* also does not apply because Owens did not lose his due process claim in state court. In fact, he did not raise such a claim in state court, and the state court did not address one. As the Supreme Court of South Carolina held in *Owens*, its finding that the director must "disclos[e] some basic facts about the drug's creation, quality, and reliability" has "a Due Process Clause component . . . but the point of law on which we primarily rely is the text of subsection 24-3-530(B) itself." *Owens*, 904 S.E.2d at 604. In his objection to Stirling's certification, Owens referenced the court's acknowledgment of this due process component, but he submitted no actual due process arguments to the state supreme court. DE 1-5. Instead, Owens's objection focused on the factual reasons why the information he sought was necessary for an informed decision about his preferred execution method. In its order overruling Owens's

12

objection, the state supreme court made no reference whatsoever to due process, and focused solely on its view that the certification provided sufficient detail for Owens to make an informed choice. DE 1-7. As this Court has explained, *Rooker-Feldman* does not apply to "questions that were never litigated in the state court." *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 872 (4th Cir. 2016). Likewise, the doctrine has no application when the state court "said nothing about the issue" being raised in the federal suit. *Id.* at 872, n. 3.

Similarly, even if the references to due process in Owens's objection could be construed as a claim, it could not be confused with the claim that he raised in his federal complaint. Again, while Owens's objection notes the state supreme court's acknowledgment of his due process interests, it neither alleged a specific violation of due process nor identified in which due process rights–substantive or procedural–the claim was seated. In contrast, Owens's federal suit alleges and details a specific violation of his procedural due process rights. "That [Owens] previously may have presented to the state court some of the arguments in his federal complaint does not strip the district court of jurisdiction." *Hulsey*, 947 F.3d at 251-52. Because any state and federal claims are distinct, it is "not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Id.* at 252 (citations omitted); *see also Exxon Mobil*, 544 U.S. at 293 ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction . . . .") (cleaned up; citation omitted).

**C.    The root of Owens's injury is not state court action, but Director Stirling's approach to his certification duties.**

Next, the doctrine is inapposite because the injury for which Owens and the Plaintiffs seek federal redress was not caused by the South Carolina Supreme Court, it was caused by Defendant's failure to provide adequate information concerning the drugs to be used in the

execution. That the state court "ratified, acquiesced in or left unpunished" Director Stirling's actions did not produce the injury. *Hulsey*, 947 F.3d at 250 citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). As already explained, it was Director Stirling's duty, not the state court's, to decide in the first instance how much information Owens would be given about the execution methods. The South Carolina Supreme Court itself emphasized this when it provided only "examples" to "illustrate the scope of" the certification requirement, but "decline[d] to offer further particulars on where between these [examples] the Director's explanation must fall; *that is initially for the Director to decide.*" *Owens*, 904 S.E.2d at 605 (emphasis added). Even the state court, then, recognized that it was the Director's role, and not the court's, to decide what Owens would be told about how his execution might be carried out. And this Court has made clear that an "injury at the hands of a third party may be ratified, acquiesced in, or left unpunished by a state-court decision without being 'produced by' the state-court judgment" such that *Rooker-Feldman* strips federal jurisdiction. *Hulsey*, 947 F.3d at 250-51 (citation omitted). The fact that the Director's refusal to provide Owens with sufficient information "was merely enabled by the state court's . . . ruling," *id.*, does not change the fact that Director Stirling's certification is the source of Owens's constitutional injury, and thus, *Rooker-Feldman* is inapplicable.

> **D.    There is no *Rooker-Feldman* problem because the state action being challenged is a broadly applicable rule of state law, and not a case specific determination unique to Owens.**

Finally, the Court must also find *Rooker-Feldman* beside the point in light of *Skinner v. Switzer*, 562 U.S. 521 (2011). There, a Texas prisoner sought post-conviction DNA testing of evidence under a state procedure, and was denied. The prisoner then turned to federal court, seeking to have the DNA tested in a § 1983 suit, alleging the state courts' refusal to conduct the

tests violated due process. *Id.* at 527-29. The U.S. Supreme Court rejected the argument that *Rooker-Feldman* barred the § 1983 suit, explaining, "Skinner does not challenge the adverse [state court] decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed." *Id.* at 532. Because Skinner was only challenging the "statute or rule governing the [state court] decision" and not the decision itself, federal jurisdiction was proper. *Id.*

The Third Circuit's explication of *Skinner* in *Wade v. Monroe Country District Attorney*, 800 Fed. Appx. 114, 118 (3d. Cir. 2020), is instructive. In that case, the Third Circuit explained that Wade could not benefit from *Skinner* because it appropriately involved a prisoner's federal challenge to a "broad pronouncement about how the [state] statute should be construed in all cases," while Wade was inappropriately attempting to use a federal lawsuit to challenge the state court's "particular interpretation of the DNA statute and application of the statute to him, not to the statute as 'authoritatively construed' by [state] courts or as it applies to prisoners generally." 800 Fed. Appx. at 119. *See also LaMar v. Ebert*, 681 Fed. Appx. 279, 288 (4th Cir. 2017) (holding *Rooker-Feldman* inapplicable where the plaintiff was "challenging the constitutionality of the DNA statute," and not "the merits of [a] state court decision.") (citations omitted).

Owens plainly falls under the former scenario, not the latter. He challenges Director Stirling's authoritative application—and the state supreme court's acquiescence to that application—of the execution certification requirement. This is not a challenge to a state court ruling about Owens's specific case. It is a challenge to the manner in which Stirling has

authoritatively decided to apply the certification requirement to all condemned prisoners.

Owens's suit thus falls well within the jurisdictional shoals set out in *Skinner*.[2]

**IV.     Owens has met the preliminary injunction factors, and should be granted a temporary restraining order and permanent injunction pending final resolution of his § 1983 suit.**

A preliminary injunction is appropriate when the plaintiff establishes: (1) likelihood of success on the merits; (2) irreparable harm without the preliminary relief; (3) the balance of equities tips in the moving party's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013). Where a plaintiff makes a strong showing of irreparable harm, the need to show a likelihood of success on the merits is lessened. *Rogers v. Comprehensive Rehab. Assocs., Inc.*, 808 F. Supp. 493, 498 (D.S.C. 1992).

Plaintiff Owens meets these criteria because of his clear right under state law to reasonable information; his tailored request for information, much of which is not even barred from disclosure by state secrecy rules concerning executions; and because the information he seeks poses no threat to South Carolina's ability to impose death sentences.

---

[2] The district court believed *Wade v. Monroe Country District Attorney*, 800 Fed. Appx. 114, 118 (3d. Cir. 2020); *Durham v. Haslam*, 528 Fed. Appx. 559, 563-64 (6th Cir. 2013); and *Cooper v. Ramos*, 704 F.3d 772, 780 (9th Cir. 2012), supported its decision. DE 19, pp. 14-15. But each of these cases involved a case-specific state court decision, which is barred from federal review by *Rooker-Feldman*. Owens's case, in contrast, is a challenge to a broadly-applicable state court rule.

**A.** **Owens is likely to succeed on the claim that South Carolina's failure to provide necessary information to choose between lethal injection, the firing squad, and electrocution violates his right to due process.**[3]

Much like the preliminary injunction analysis itself, a claim of procedural due process involves a flexible inquiry and calls on courts to fashion remedies that balance the interest of those seeking additional procedural protections with the government's ability to implement its own interests without undue burden. *See Incumaa v. Stirling*, 791 F.3d 517, 532 (4th Cir. 2015) ("Particularly in the prison context, the requirements of due process are flexible and call for such procedural protections as the particular situation demands.") (citation and internal quotations omitted). As a general matter, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted). When determining what process is due, a court must balance: (a) the nature of the private interest that will be affected by the governmental action; (b) the risk of erroneous deprivation through the procedures used and the probable value of requiring additional procedural safeguards; and (c) the government's interest. *Id.* at 335. This balancing analysis favors disclosure of the limited information Plaintiffs seek about their executions.

**1.** **Owens has a state-conferred right to choose the least inhumane method of execution available.**

"The Supreme Court has long recognized that," in order to invoke procedural due process protections, there must be a "state statute, regulation, or policy [that] creates such a liberty interest . . . ." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). As already detailed, South Carolina law provides Owens the right to make an informed choice about their method of

---

[3] The focus here on procedural due process is intended only to streamline the preliminary injunction inquiry, not to abandon the additional claims.

execution. The state-created interest here has its roots in a South Carolina statute, S.C. Code. §
24-3-530(A), which grants Plaintiffs "the right of election" to choose between the available
methods of execution. The statute underscores the importance of this right by also requiring, in
subsection I, that "[t]he Department of Corrections must provide written notice to a convicted
person of his right to election under this section and the available methods." The South Carolina
Supreme Court has recognized that S.C. Code. § 24-3-530(A) creates a right to choose between
multiple methods of execution. In 2021, the state supreme court enjoined executions because
"only a single method of execution [was] available, and due to the statutory right of inmates to
elect the manner of their execution . . . ."[4]

Then, when deciding the state constitutional challenges earlier this year, the state
supreme court explained why the statutory right of choice exists and the interests it is designed to
protect. It clarified that a "condemned inmate may elect to have the State employ the method he
and his lawyers believe will cause him the least pain," and explained that "[u]nder the choice
provisions of section 24-3-530, a condemned inmate in South Carolina will never be subjected to
execution by a method he contends is more inhumane than another method that is available."
*Owens v. Stirling*, 904 S.E.2d 580, 608 (S.C. 2024).

The state supreme court also clarified that the corrections director is required to provide
the necessary information to effectuate the statutory right to choose the least inhumane method
available. With regard to lethal objections, the state court held that the corrections director has an
obligation to "explain . . . the basis of his determination that the drugs are of sufficient 'potency,
purity, and stability' to carry out their intended purpose. *Id.* at 604. The court added that "[t]he

---

[4] *State v. Owens*, No. 2006-038802 (S.C. June 16, 2021); *State v. Sigmon & Sigmon v. State*,
Nos. 2002-024388, 2021-000584 (S.C. June 16, 2021). These orders are publicly available
through South Carolina's C-Track online docketing system.

text of section 24-3-530 requires" the corrections director to provide "sufficient detail" about the execution drugs such "that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution." *Id.* At 605. Leaving no ambiguity about the nature of this state-conferred right for purposes of procedural due process, the *Owens* court made clear, "[there] is a Due Process Clause component to our analysis" of the information required for disclosure under § 24-3-530. *Id.* at 604.

In light of the South Carolina court's robust interpretation of the election right conferred under state law—and in particular, the holding that this interpretation has a due process component—there can be little doubt that Owens can establish a liberty interest triggering procedural due process protections.

> **2.      Defendants' refusal to provide basic information about the execution drugs undermines Owens's ability to make an informed choice about his method of execution.**

Owens asked the South Carolina Supreme Court to order disclosure of information as detailed and laid out above in Dr. Almgren's affidavit. DE 1-6, which they need to make an informed choice about whether lethal injection will be a less inhumane method of execution than other available methods.

As Dr. Almgren explains, in the absence of this information, there are risks of "extensive damage to the blood vessels and surrounding tissue," "intense pain upon injection," and potentially "a prisoner regaining consciousness, perhaps with organ or brain damage from oxygen deficits suffered during the attempt at execution." This information, from a highly qualified expert, is more than enough to demonstrate that Owens cannot meaningfully decide which method of execution "will cause [them] the least pain" without knowing the risks inherent in the specific drugs Defendants plan to use for lethal injection.

In addition to the risks posed by the refusal to provide information about the execution drugs, Owens's facial challenge to the statutory prohibition on disclosing the "professional qualifications" of execution team members, *see* S.C. Code § 24-3-580(A)(2), creates an additional risk of depriving him of the right to choose the least inhumane execution method. The qualifications of those tasked with establishing IV lines are particularly important.

According to reports maintained by the Death Penalty Information Center, over the past decade, there have been 18 botched executions, five of which failed completely. A substantial portion of these botched executions involved protracted difficulty in setting up IV lines. In one case a prisoner even had to assist the execution team in bringing about his own death by suggesting a good spot to start an IV line.[5] Without question, in order to meaningfully exercise his state-granted right to choose between execution procedures, Plaintiff Owens needs to know the training and qualifications of the execution team so he can assess the risk of serious and painful IV-related errors.

> **3.     Providing Owens with basic information about the execution drugs, and about the execution team's professional qualifications, will not significantly impair any state interest.**

In refusing to provide basic information about the drugs, and when justifying the statutory prohibition on disclosure of professional qualifications, Defendants are likely to assert two state interests: the interest in shielding identifying information about individuals and entities involved in carrying out executions, and the interest in being able to carry out Plaintiffs' death sentences. Yet providing the information Owens seeks would compromise neither interest.

As for the first interest, confidentiality, Owens has made reasonable, limited requests for information about the execution drugs that can be addressed without violating or invalidating

---

[5] *See* https://deathpenaltyinfo.org/executions/botched-executions.

South Carolina's secrecy statute. The South Carolina Legislature enacted S.C. Code § 24-3-580(B) to protect the "identifying information of a person or entity that participates in the planning or administration of the execution of a death sentence . . . ." The law does so by establishing that "identifying information" must be "construed broadly" to protect numerous aspects of the identity of execution team members:

> to include any record or information that reveals a name, date of birth, social security number, personal identifying information, personal or business contact information, or professional qualifications. The term "identifying information" also includes any residential or business address; any residential, personal, or business telephone number; any residential, personal, or business facsimile number; any residential, personal, or business email address; and any residential, personal, or business social media account or username.

S.C. Code § 24-3-580(A)(2); *see also* § 24-3-580(I).

The secrecy law goes on to require that "[t]his section shall be broadly construed by the courts of this State so as to give effect to the General Assembly's intent," and specifies that intent as "the absolute confidentiality of the identifying information" of those involved with executions. S.C. Code § 24-3-580(I).

Beyond individuals' or entities' identifying information, the secrecy law addresses execution drugs by exempting their creation or dispensing for executions from licensing and regulatory requirements. S.C. Code §§ 24-3-580(D), I, and (F). However, the secrecy law does not establish any provision governing or limiting disclosure of information about the transportation, storage, testing, or chemical composition of the drugs.

Given this statutory backdrop, Owens has not asked for any information that would lead to revealing the identities of the individuals or companies involved in creating, storing, or transporting the drugs. Owens has not tried to find out who those people were so their specific

21

history, skills, or qualifications can be scrutinized. Instead, mindful of state law, Owens merely asked for information about the drugs' characteristics that are relevant to their efficacy, and about the specific testing performed and results obtained to confirm the pentobarbital will work as claimed. There is no basis in state law for Defendants or the state supreme court to refuse disclosure of this information.[6] Defendants can disclose the drug-related information to Owens without violating a single provision of the secrecy law.

Turning to the next State interest that Defendants are likely to advance, Defendants will undoubtedly protest that their chosen interpretation of the secrecy statute, and refusal to provide the requested information, is necessary to protect the State's ability to obtain the drugs and equipment needed to carry out lethal injections. Yet any such claim is undermined by the fact that other states have conducted executions while also permitting access to the same or similar information that Plaintiffs seek.

Since 2020, the Texas Attorney General has issued a series of public record request rulings requiring disclosure of information including execution-drug storage inventory logs, expiration dates, DEA forms, lab reports, and receipts, subject to redaction of identifying information of entities and persons involved in the execution process.[7] Yet in the same time period, since 2020, Texas has executed 22 prisoners, all with lethal injection.

---

[6] Owens acknowledges this argument only applies to his request for information about the execution drugs. In order to grant his further request for the professional qualifications of the execution team, the Court will ultimately need to find that aspect of the secrecy statute unconstitutional.

[7] Tex. Atty. Gen. Op. OR2022-10880, 2022 WL 1232223 (Apr. 13, 2022); Tex. Atty. Gen. Op. OR2021-25974, 2021 WL 4465070 (Sept. 21, 2021); Tex. Atty. Gen. Op. OR2021-11962, 2021 WL 2801824 (May 7, 2021); Tex. Atty. Gen. Op. OR2021-05915, 2021 WL 1411021 (Mar. 10, 2021); Tex. Atty. Gen. Op. OR2020-29881, 2020 WL 7629911 (Dec. 2, 2020); Tex. Atty. Gen. Op. OR2020-20270, 2020 WL 4890668 (Aug. 13, 2020).

In 2021, a Georgia federal district court ordered extensive disclosure of documents about lethal injection drugs, subject to limited redactions to protect the identity of those involved:

> Documents concerning the compounding or mixing of pharmaceutical ingredients for use in Georgia's Protocol, including documents showing chemical properties and the process by which the compound is manufactured and the length of that process (Request No. 15), can be redacted to provide that relevant information without disclosing pharmacies and pharmacist and thus threatening Georgia's ability to enforce its laws. This will allow Plaintiff the information he needs to assess the efficacy of the lethal Injection drug without jeopardizing the disclosure of critical information. So too, documents showing the inspection, supervision, oversight, and quality of any facility producing the lethal injection drug (Request No. 13) and documents related to the transportation and storage of pharmaceutical ingredients used in the Protocol (Request No. 14) can be redacted and produced so that Plaintiff obtains the information he seeks without jeopardizing Georgia's interests.

*Martin v. Ward*, No. 1:18-CV-4617-MLB, 2021 WL 1186749, at *9 (N.D. Ga. Mar. 30, 2021). Even with this disclosure, Georgia was still able to carry out a lethal injection execution in March 2024.

Utah has a regulation, Utah Admin. Code R251-107-7, that permits "press access to the execution and information concerning the execution," and "recognize[s] the need for the public to be informed concerning executions" and for the corrections department to "cooperate with the news media to inform the public concerning the execution in timely manner." Even with this general policy favoring transparency, Utah conducted a lethal injection execution in 2024.

In a South Dakota district court decision—*Moeller v. Weber*, No. CIV 04-4200, 2013 WL 5442392 (D.S.D. Sept. 30, 2013)—the court unsealed method of execution documents, subject to redactions, because it was "a continuing matter of public interest and concern both in South Dakota and elsewhere . . . ." The district court rejected the defendants' theory that even

documents with identification redacted must remain sealed to prevent plaintiffs or the public from piecing together the identity of those involved:

> The Defendants have urged a mosaic theory with the idea being that by taking different pieces of unsealed information the identity of executioners, compounding pharmacist, and manufacturer could be deduced. The Court does not agree with that argument except to the extent that the qualifications of persons need not be so specific that they could result in identification of execution team members or the compounding pharmacist. The identity of the manufacturer will continue to be kept under seal.

*Id.* at *1. Even in the face of this expansive ruling, South Dakota carried out two lethal injection executions in 2018 and 2019.

If these other jurisdictions were able to strike a balance between providing important information about the drugs used when taking a prisoner's life, and protecting states' ability to conduct the executions, there is no reason why South Carolina cannot do the same.

Nor can Defendants show that Owens's facial challenge to the secrecy statute's prohibition on disclosure of "professional qualifications" will meaningfully impair their ability to find companies and personnel willing to assist with the process. As with the drug information, the Court should again consider that numerous states have been successful in conducting lethal injection in recent years while also disclosing at least some minimum degree of information about the training and qualifications of their execution and IV team members.

For example, since 2020, Florida has executed seven prisoners. Nonetheless, unlike South Carolina's execution protocol, Florida's protocol assures that the person injecting the lethal drugs has undergone a criminal background check, and further assures that only licensed medical professionals will be charged with maintaining and mixing the lethal chemicals,

attaching and observing consciousness monitors, examining the inmate for relevant health issues prior to execution, and achieving and monitoring venous access.[8]

Texas has executed over twenty prisoners by lethal injection since 2020, yet the execution protocol there requires that at least one member of the "drug team" be medically trained, have at least one year of experience in their medical field, and be certified or licensed as a medical assistant, phlebotomist, emergency medical technician, paramedic, or military corpsman.[9]

Oklahoma, another active death penalty jurisdiction that has executed 13 prisoners since 2020, also requires that one or more members of their IV execution team be certified or licensed as a medical professional.[10]

These are only a few preliminary examples of the type of information and assurances that other states provide about the professional qualifications of their lethal injection teams. Given these disclosures in other executing jurisdictions, Defendants cannot credibly claim that this aspect of the secrecy law is necessary to satisfy State interest in imposing Owens's death sentence.

###### B.    Plaintiff Owens will suffer irreparable injury without a preliminary injunction.

Having established that Owens has a strong procedural due process claim with a likelihood of prevailing on the merits, the Court must turn to the remainder of the preliminary injunction analysis.

---

[8] Florida's execution procedures are publicly available.

[9] Texas's execution protocol is available as an attachment to the petition for certiorari review in a recent U.S. Supreme Court case, *Renteria v. Texas*, No. 23-6036.

[10] Oklahoma's execution procedures are publicly available.

The next preliminary injunction factor the Court must consider is irreparable injury. Owens's execution is scheduled for September 20, 2024. If his execution is not stayed, he faces the irreparable harm of being put to death without the state-granted right to choose, on a meaningful and appropriately-informed basis, the least inhumane method of execution available to him. "In cases involving the death penalty when an execution date has been set, as here, it is a certainty that irreparable harm will result if the [execution] . . . is not stayed. *Beaver v. Netherland*, 101 F.3d 977, 979 (4th Cir. 1996). It is difficult to imagine a more irreparable, serious harm than a death inflicted through a painful method that could have been avoided had the state provided the basic information necessary to make an informed choice about Plaintiff Owens's manner of death; and a choice, no less, that Owens has a right to under state law. Because Owens has established a strong showing of irreparable harm, his need to show a likelihood of success on the merits is less stringent. *Rogers v. Comprehensive Rehab. Assocs., Inc.*, 808 F. Supp. 493, 498 (D.S.C. 1992).

**C.    The threatened injury to Owens outweighs any minimal harm injunctive relief might cause to Defendants, and an injunction services the public interest.**

Finally, the balance of equities tips to the point of falling over in Owens's favor. As already discussed, much of the information sought has been provided in other states, and those states have still been able to vindicate their interests in imposing death sentences. There is no reason why South Carolina should be any different. Moreover, the Court could require disclosure of the drug-related information without even having to reach or disturb the state secrecy law in any respect. Even Owens's facial challenge to the secrecy statute concerns only a narrow sliver of that law; granting Plaintiffs' relief on the facial claim would leave the vast majority of § 24-3-580 and its confidentiality protections intact.

As a result, giving Owens the critical information he needs to make a meaningful, informed decision about his method of execution will pose no meaningful barrier to Defendants carrying out executions, nor will it meaningfully disrupt any other state interest or state law. There is very little if anything to place on Defendants' side of the scale. While Defendants certainly have an interest in the timely enforcement of death sentences, this interest should carry little weight in the preliminary injunction analysis since the relief Owens seeks in this suit will not cause any significant delay.

Finally, the public interest in disclosure and injunctive relief also favors Owens. As discussed, Defendants' secrecy policies about lethal injection are some of the most restrictive in the country, and in some respects conceal more information from Owens than other states that have carried out lethal injections during the time period that South Carolina officials claimed they were unable to. If South Carolina is indeed going to resume executions after a 13-year hiatus, it is undoubtedly in the public interest that Defendants provide sufficient information to permit South Carolinians residing on death row to choose the least inhumane execution method that is available. "[C]onfidence in the humane application of the governing laws of the State must be in the public's interest." *Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004).

Indeed, carrying out executions in a humane and constitutional manner is vitally important to the public. The humanity recognized by Eighth Amendment jurisprudence requires the State to make every effort to humanely execute Owens. *See Hall v. Florida*, 572 U.S. 701, 708 (2014) ("By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons."). Moreover, the public interest calls for executions to be carried out cautiously and deliberately. *See Stanley v. Illinois*, 405 U.S. 645, 656 (1972) (acknowledging that the "Constitution recognizes higher values than

speed and efficiency"). The public interest thus favors the Court granting an injunction so that Owens's execution is not carried out before State officials provide him with basic information about the process that is readily available in other active death penalty jurisdictions.

<u>**CONCLUSION**</u>

The Court should issue an emergency administrative injunction, and a preliminary injunction, that prevents the State from executing Mr. Owens pending appeal. A stay will permit the federal courts to address whether the Constitution requires Defendants to provide Owens with the minimum amount of basic information necessary for him to make an informed choice about the least inhumane execution method from among the available options.

Owens respectfully requests that the Court order Defendant-Appellees to submit their briefing on an expedited basis, and requests that the Court decide this matter on an expedited basis in light of Owens's execution set for September 20, 2024, at 6 p.m.

Respectfully submitted,

*/s/ Gabrielle Amber Pittman*
Gabrielle Amber Pittman
Deputy Chief
Capital Habeas Unit for the Fourth Circuit
G_Amber_Pittman@fd.org

David Weiss
Assistant Federal Public Defender
Capital Habeas Unit for the Fourth Circuit
David_C_Weiss@fd.org

Federal Public Defender
for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 688-6946

*/s/ Lindsey S. Vann*
Lindsey S. Vann
JUSTICE 360
900 Elmwood Avenue, Suite 200
Columbia, SC 29201
Lindsey@justice360sc.org

*/s/ Joshua Snow Kendrick*
Joshua Snow Kendrick
KENDRICK & LEONARD, P.C.
P.O. Box 6938
Greenville, SC 29606
Josh@kendrickleonard.com

COUNSEL FOR PLAINTIFF OWENS

September 19, 2024

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

The foregoing document exceeds the Court's word limit for motions, but Plaintiff-Appellant Owens will submit a motion for leave to exceed the word limit. Counsel were unable to seek leave prior to filing their injunction motion due to the necessarily compressed nature of this execution warrant litigation.

This document has been served upon counsel of record through the CM/ECF filing system.

September 19, 2021.

/s/ Gabrielle Amber Pittman
Gabrielle Amber Pittman
