IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Steven V. Bixby; Marion Bowman, Jr.; Mikal D. Mahdi; Richard Bernard Moore; Freddie Eugene Owens[1]; Brad Keith Sigmon,<br><br>    Plaintiffs,<br><br>v.<br><br>Bryan P. Stirling, *in his official capacity as the Director of the South Carolina Department of Corrections*; South Carolina Department of Corrections,<br><br>    Defendants,<br><br>v.<br><br>Governor Henry Dargan McMaster,<br><br>    Intervenor. | Case No. 3:24-cv-05072-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on Plaintiff Freddie Eugene Owens's motion for preliminary injunction and request for expedited consideration ("Owens's Motion"). [Doc. 5.] Owens is a prisoner under the control and supervision of Defendant South Carolina Department of Corrections ("SCDC"), having been convicted and sentenced for the 1997 murder of Irene Graves during an armed robbery of a convenience store where she worked. [Doc. 1 ¶ 4]; *see Owens v. Stirling*, 967 F.3d 396, 403 (4th Cir. 2020). Plaintiffs are all prisoners incarcerated under SCDC's control and supervision

---

[1] In 2015, Owens's legal name was changed to Khalil Divine Black Sun Allah. [*See* Doc. 1 at 1 n.1.] However, Plaintiffs in their Complaint note that because all of Owens's prior proceedings before the South Carolina state and federal courts were filed under the name Freddie Owens, the Complaint uses the name Owens for clarity [*id.*], and the Court does as well.

who have been sentenced to death, and they have filed an action under 42 U.S.C. § 1983 alleging that they have a constitutional right to particular information about the drugs SCDC has obtained for purposes of carrying out their deaths by lethal injection. [Doc. 1.] Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Owens asks the Court to preliminarily enjoin his execution so he is not put to death before the constitutional claims detailed in Plaintiffs' Complaint can be adjudicated. [Doc. 5 at 1.] The Court construes this motion for preliminary injunction as one for a temporary restraining order. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (explaining that "a preliminary injunction preserves the status quo pending a final trial on the merits, [while] a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held"); *see also Bothwell v. ExpressJet Airlines, LLC*, No. 1:20-cv-02079-WMR, 2020 WL 6931059, at *1 (N.D. Ga. Oct. 6, 2020) ("Although Plaintiff titles its Motion as a request for a Preliminary Injunction, the Court treats it as a Motion for a Temporary Restraining Order because of the emergency nature of the claim.").

## BACKGROUND

**The Complaint's Factual Allegations and the Litigation Concerning South Carolina's Death Penalty Statute**

In 2021, the South Carolina Legislature (the "Legislature") amended South Carolina's death penalty statute (the "Death Penalty Statute" or the "Statute") to make electrocution the default method of execution but permitting the person sentenced to death to also choose "firing squad or lethal injection, if it is available at the time of election." S.C. Code § 24-3-530(A). South Carolina law further provides that, upon receiving a notice of execution, SCDC's director (the "Director") must "determine and

3:24-cv-05072-JDA     Date Filed 09/18/24    Entry Number 19    Page 3 of 17

certify by affidavit under penalty of perjury to the Supreme Court whether the methods [of execution] provided" by the Death Penalty Statute—electrocution, firing squad, and lethal injection—"are available." *Id.* § 24-3-530(B).

Plaintiffs allege that from 1995 until 2021, lethal injection had been the primary means of execution in South Carolina but that South Carolina has not actually carried out executions since 2011, due in part to the reluctance of drug manufacturers and suppliers to provide drugs for executions in a manner that might publicly reveal their identities. [Doc. 1 ¶¶ 7–8.] In 2023, the Legislature enacted legislation amending an existing statute to provide protection from disclosure to drug suppliers and all other persons or entities associated with the "planning or administration" of an execution. [*Id.* ¶ 12]; 2023 S.C. Laws Act 16. As amended, the statute (the "Shield Statute") exempts the purchase of lethal injection drugs from South Carolina's procurement rules, Department of Health and Environmental Control regulations, and pharmacy guidelines. [Doc. 1 ¶ 12]; S.C. Code § 24-3-580(D)–(F). With the Shield Statute in place, Defendant Director Bryan P. Stirling was able to acquire—from an unidentified source—the drugs needed to carry out lethal injection executions, and he so informed the state supreme court in September 2023. [Doc. 1 ¶ 14.]

Three of the Plaintiffs herein were among those who recently litigated a lawsuit alleging that the Death Penalty Statute violates the state constitution in several respects. *See Owens v. Stirling*, 904 S.E.2d 580 (S.C. 2024) ("*Owens*"). On July 31, 2024, the state supreme court issued a decision in that case holding that the Statute is not impermissibly retroactive; that neither death by electrocution, death by firing squad, nor the provision allowing the condemned to choose his execution method violates the

3

South Carolina constitutional mandate "nor shall cruel, nor corporal, nor unusual punishment be inflicted"; that the term "available" in the Statute allowing inmates to elect either firing squad or lethal injection as an alternative to electrocution "if available," is not unconstitutionally vague; and that the provision requiring the Director to determine the drug protocol to use to carry out the death sentence by lethal injection does not violate separation of powers. *Id.* Regarding the constitutionality of the provision allowing condemned inmates to choose among the different execution methods, the court emphasized that the provision represented "the General Assembly's sincere effort to make the death penalty less inhumane while enabling the State to carry out its laws." *Id.* at 608. The court also held that the provision requiring the Director to "determine and certify by affidavit . . . whether the methods . . . are available" mandates that if the Director is able to obtain the necessary drugs, he "must explain to those legally entitled to the explanation the basis of his determination that the drugs are of sufficient potency, purity, and stability to carry out their intended purpose," which "requires nothing more than that the Director set forth that process in sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution." *Id.* at 604–05 (internal quotation marks omitted).

After issuing *Owens*, on August 23, 2024, the state supreme court issued an execution notice directing SCDC to set Owens's execution for September 20, 2024.[2]

---

[2] On August 30, 2024, the state supreme court issued an order establishing a regular interval of at least 35 days between the issuance of death notices and determined that after the issuance of Owens's death notice, the court would issue notices for inmates with exhausted appeals in the following order: (1) Richard Moore, (2) Marion Bowman, Jr., (3) Brad Sigmon, (4) Mikal Mahdi, (5) Steven Bixby. [Docs. 1 ¶ 20; 1-4.] Plaintiffs

4

[Docs. 1 ¶ 17; 1-2.] Five days later, Stirling submitted a certification to that court, pursuant to S.C. Code § 24-3-530(B), stating, among other things, that SCDC had obtained pentobarbital for use in a lethal injection; that the pentobarbital is of sufficient potency, purity, and stability to carry out an execution successfully; and that the forensic laboratory of the South Carolina Law Enforcement Division had tested and approved the pentobarbital.[3] [Docs. 1 ¶¶ 18, 19; 1-3.]

---

allege that unless the state supreme court finds that circumstances justify deviating from the 35-day interval, Plaintiffs' executions will be scheduled as follows: Owens, September 20, 2024; Moore, October 25, 2024; Bowman, November 29, 2024; Sigmon, January 3, 2025; Mahdi, February 7, 2025; and Bixby, March 14, 2025. [*Id.* ¶ 21.]

[3] In his affidavit, Stirling stated, in relevant part, as follows:

> I am certifying that lethal injection is available via a single dose of pentobarbital. I have confirmed that the pentobarbital in [SCDC's] possession is of sufficient potency, purity, and stability to carry out an execution successfully using [SCDC's] lethal injection protocol. [SCDC] provided pentobarbital to the S.C. Law Enforcement Division ("SLED") for testing by its Forensic Services Laboratory. SLED confirmed that its Forensic Services Laboratory is an internationally accredited forensic laboratory and that it used widely accepted testing protocols and methodologies in this matter. SLED reported to me that experienced, qualified, and duly authorized personnel tested two vials and confirmed the concentration of the solution provided is consistent with the vial labeling of pentobarbital, 50 milligrams per milliliter, and acknowledged the substance's concentration in terms of its purity and stability. The appropriate and responsible [SCDC] staff reported to me that, based on a review of SLED's test results, data published by National Institutes of Health, and information regarding executions by lethal injection using pentobarbital carried out by other States and the federal government, the dosage called for by [SCDC's] lethal injection protocol is sufficiently potent such that administration in accordance with the protocol will result in death.

[Doc. 1-3 ¶ 10.]

Owens subsequently filed an objection in the state supreme court to Stirling's certification, asserting that his affidavit was insufficient and requesting additional information about the testing and properties of the execution drugs SCDC had obtained (the "Additional Information").[4] [Doc. 1-5; *see* Doc. 1 ¶¶ 22, 24, 26.] To his objection, Owens attached an affidavit from Dr. Michaela Almgren, Pharm.D. M.S., explaining why Owens needed the Additional Information to make an informed decision as to which execution method would pose the least risk of harm. [Docs. 1 ¶ 24; 1-5; 1-6.] On September 5, the state supreme court overruled Owens's objection and denied his request, ruling that Stirling had provided all the information that the Death Penalty Statute required. [Docs. 1 ¶ 22; 1-7.] On September 6, 14 days before his execution date, Owens made his election regarding the method of execution, choosing death by lethal injection. [Doc. 1-8]; *see* S.C. Code § 24-3-530(A) (providing that the election "must be made in writing fourteen days before each execution date or it is waived").

On September 13, 2024, Plaintiffs brought the present action under 42 U.S.C. § 1983. [Doc. 1.] Plaintiffs allege that the Shield Statute, on its face, does not restrict access to the Additional Information. [*Id*. ¶ 25.] Plaintiffs also allege that the need for sufficient information about the integrity of the lethal injection drugs is heightened

---

[4] Specifically, Owens argued that the affidavit did not provide information about the date the drugs were tested; their Beyond Use Date or expiration date; the methods and procedures used to test the drugs, including documentation of test method validation and details of quality control procedures and methodology; the actual results of the testing; and where the drugs were to be stored prior to their use and how the storage considerations would be monitored, including temperature and humidity controls. [Docs. 1-5; 1-6.] Accordingly, Owens requested "the actual report and results from the testing of the lethal injection drugs intended for use in [Owens's] execution (with the identity of the analyst redacted) and documentation of the drugs' beyond use date and storage conditions." [Doc. 1-5.]

6

because of the circumstances under which they were obtained, namely, that Stirling admitted to making over 1,300 contacts before he was successful in obtaining pentobarbital. [*Id.* ¶ 27.] Plaintiffs contend that the difficulty Defendants faced in acquiring the drugs from standard sources raises legitimate questions about the quality of the materials they eventually obtained. [*Id.*] Additionally, they maintain that the need for information concerning the drugs is greater due to the absolute restrictions the Shield Statute places on disclosure of information relating to the source of the drugs and the circumstances surrounding their creation, and due to the exemptions from licensing and regulatory requirements that the Shield Statute grants to those involved in manufacturing and procuring the drugs. [*Id.* ¶ 28.] Plaintiffs complain that they are also unable to obtain information regarding the "professional qualifications" of the people who will set up, prepare, and administer the lethal injection process. [*Id.* ¶ 30 (internal quotation marks omitted).] Consequently, Plaintiffs claim they "cannot make an informed choice about their method of execution in the absence of information about whether the lethal injection team is appropriately trained and qualified." [*Id.* ¶ 31.]

Plaintiffs further contend the Shield Statute requires SCDC to "comply with federal regulations regarding the importation of any execution drugs," yet the Shield Statute prevents Plaintiffs, or any member of the public, or even South Carolina officials outside of SCDC, from knowing whether federal compliance is taking place. [*Id.* ¶ 32 (internal quotation marks omitted).] Thus, Plaintiffs contend the Shield Statute creates a federal compliance requirement but arbitrarily prohibits any mechanism for ensuring that compliance is happening. [*Id.*]

7

**Plaintiffs' Claims and Remedies Sought**

Plaintiffs' Complaint asserts four claims. Plaintiffs first allege that South Carolina's death penalty laws, as applied to them, deprived them of their rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina Constitution (the "First Claim"). [*Id.* ¶¶ 33–43.] Plaintiffs allege that South Carolina's refusal to provide them with the Additional Information deprives them, without due process, of their "state-created rights to information and to choose their method of execution." [*Id.* ¶¶ 38–39.] They also allege a constitutional liberty interest in being free from cruel and unusual punishment that causes needless suffering and claim that without the Additional Information, they cannot determine whether there is a basis for challenging the constitutionality of the lethal injection option, nor could they meaningfully litigate any such claim. [*Id.* ¶ 37.]

Plaintiffs' second claim is a facial procedural due process claim, asserted under both the federal and state Constitutions regarding the Shield Statute. [*Id.* ¶¶ 44–58.] Plaintiffs allege that the Shield Statute deprives condemned inmates of their state-created right to certain information about execution drugs and to choose a method of execution that is less inhumane than other options. [*Id.*] Plaintiffs' third and fourth claims allege that depriving them of the Additional Information violates their right to access the courts by depriving them of information necessary to litigate an Eighth Amendment claim and infringes on their right to assistance of counsel as well. [*Id.* ¶¶ 59–73.]

Plaintiffs ask this Court to grant a preliminary and ultimately permanent injunction prohibiting Defendants from carrying out Plaintiffs' executions without providing the

Additional Information at least 23 days before the dates of their scheduled executions; a preliminary and permanent injunction prohibiting Plaintiffs' executions until Defendants have complied with applicable licensing and regulatory requirements; a declaration, pursuant to 28 U.S.C. § 2201, that Plaintiffs' constitutional and statutory rights have been violated; and any other relief the Court deems just and proper. [*Id.* ¶ 74.]

**Owens's Motion**

In Owens's Motion, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Owens asks the Court to preliminarily enjoin his execution so that he is not executed before Plaintiffs' constitutional claims can be adjudicated. [Doc. 5 at 1.] He contends that, without the Additional Information, it is impossible for Plaintiffs "to meaningfully exercise their state-conferred right to choose the method of execution they consider least inhumane, or to plausibly assess whether South Carolina's procedures for imposing death by lethal injection will pose an unconstitutional risk of cruel and unusual punishment." [*Id.*] Owens argues that he satisfies the criteria for issuance of a preliminary injunction because of "his clear right under state law to reasonable information; his tailored request for information, much of which is not even barred from disclosure by [the Shield Statute]; and because the information he seeks poses no threat to South Carolina's ability to impose death sentences." [*Id.* at 5.]

At a minimum, Owens contends the Court should temporarily stay his execution, scheduled for September 20, 2024, to permit full briefing and consideration of this motion for a preliminary injunction. [*Id.* at 17.] He also contends that following briefing and any argument or hearing that the Court requires, the Court should enter a

9

preliminary injunction staying Owens's execution until this suit has been fully adjudicated.[5] [*Id.*]

## APPLICABLE LAW

**Section 1983**

Section 42 U.S.C. § 1983 provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The Supreme Court has held that prisoners can bring method-of-execution claims under § 1983. *See Nance v. Ward*, 597 U.S. 159, 168–75 (2022).

**Injunctive Relief**

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Id.* "It is not enough

---

[5] South Carolina Governor Henry McMaster filed a motion on September 14 to intervene in this case, and this Court granted the motion. [Docs. 6; 17.] Governor McMaster and Defendants filed a memorandum on September 16 opposing Owens's Motion. [Doc. 10.] Owens filed a reply. [Doc. 13.] The Court has considered the arguments outlined in those filings.

10

merely to file [a § 1983 action]." *Johnson v. Lombardi*, 809 F.3d 388, 390 (8th Cir. 2015); *see Hill*, 547 U.S. at 583–84.

"The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same." *Collins v. Durant*, No. 2:23-05273-RMG, 2024 WL 4143347, at *1 (D.S.C. Sept. 11, 2024) (internal quotation marks omitted). The current standard for granting preliminary injunctive relief is set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Under *Winter*, to obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." 555 U.S. at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The party seeking a preliminary injunction bears the burden of establishing each of the four requirements. *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

## **DISCUSSION**

In Owens's Motion, Owens argues only that he is likely to succeed on the portion of his First Claim that alleges that South Carolina law creates a liberty interest in his being able to make an informed decision about which execution method is the least inhumane and about whether the three execution methods are constitutional, and that South Carolina's failure to provide the information necessary to make that decision

11

violates his due process rights under the Fourteenth Amendment.[6] [Doc. 5 at 5–15; *see* Doc. 1 ¶¶ 33–43.] The Court disagrees.[7]

Under the Due Process Clause of the Fourteenth Amendment, a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation [under the Fourteenth Amendment], a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citation omitted).

In Owens's Motion, Owens does not argue that he is likely to succeed in proving that any liberty interest in having the Additional Information arises from the Constitution

---

[6] Owens also argues that he will suffer irreparable harm without a preliminary injunction, that the threatened injury to him outweighs any minimal harm injunctive relief might cause Defendants, and that an injunction is in the public interest. [Doc. 5 at 15–17.] Because the Court concludes that Owens has shown no likelihood of success on the merits, the Court does not address the other *Winter* requirements.

[7] The Court notes that Owens's claims are not mooted by the fact that he has already elected the method by which he will be executed. Owens was required by Statute to make his election by September 6, 2024—14 days prior to the date set for his execution. *See* S.C. Code § 24-3-530(A), (C). Were he successful in obtaining the requested injunctive relief, he would become entitled to receive the Additional Information and use it to make a different election. [Doc. 1 ¶ 74]; *see* S.C. Code § 24-3-530(A) (providing that "[i]f the convicted person receives a stay of execution . . ., then the election expires and must be renewed in writing fourteen days before a new execution date").

12

itself or by reason of guarantees implicit in the word "liberty."[8]  Rather, Owens argues that the Death Penalty Statute and the state supreme court's interpretation of it create the relevant liberty interest by requiring the Director to share certain information regarding drugs that have been obtained for use in the lethal injection process and by allowing condemned inmates to elect one of three execution methods.  [Doc. 5 at 6–7.]  The Court is not persuaded that South Carolina has created a liberty interest as broad as Owens claims.

To establish the existence of a state-created liberty interest, a prison inmate must show, first, that a state statute, regulation, or policy "creates an objective expectation in

---

[8] Although Owens does not argue in his motion that the Constitution itself provides him a right to receive the Additional Information that is separate and apart from any liberty interest that South Carolina has created, the Court nonetheless notes that "[t]he United States Court of Appeals for the Fourth Circuit has never decided whether a death row inmate has a right to discover information pertaining to his execution[,] . . . [b]ut every other circuit to address a prisoner's procedural due process challenge to a secrecy statute has squarely rejected it."  *Gray v. McAuliffe*, No. 3:16CV989-HEH, 2017 WL 102970, at *19 (E.D. Va. 2017).  Specifically, the Eleventh Circuit has held that a prisoner has no procedural due process right "to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters."  *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1292–93 (11th Cir. 2016) (internal quotation marks omitted).  The Fifth, Sixth, and Eighth Circuits have reached similar conclusions.  *See Phillips v. DeWine*, 841 F.3d 405, 420 (6th Cir. 2016) ("Plaintiffs argue that HB 663 prevents them from bringing an effective challenge to Ohio's execution procedures.  Specifically, they maintain that HB 663 denies [them] an opportunity to discovery and litigate non-frivolous claims.  But no constitutional right exists to discover grievances or to litigate effectively once in court." (alteration in original) (internal quotation marks omitted)); *Zink v. Lombardi*, 783 F.3d 1089, 1109 (8th Cir. 2015) (en banc) (concluding that the Constitution does not require detailed disclosure about a state's execution protocol and that a "prisoner's assertion of necessity—that [the State] must disclose its protocol so he can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest" (internal quotation marks omitted) (citations omitted)); *Trottie v. Livingston*, 766 F.3d 450, 452 (5th Cir. 2014) ("A due process right to disclosure requires an inmate to show a cognizable liberty interest in obtaining information about execution protocols . . . .  However, we have held that an uncertainty as to the method of execution is not a cognizable liberty interest.").

the liberty interest in such a way that an inmate could reasonably expect to enforce [it] against prison officials." *Desper v. Clarke*, 1 F.4th 236, 247 (4th Cir. 2021) (alteration in original) (internal quotation marks omitted). In *Owens*, the state supreme court determined what information the Death Penalty Statute requires the Director to provide regarding the drugs to be used in a lethal-injection execution, *see Owens*, 904 S.E.2d at 604–05, and then the court specifically decided—in overruling Owens's objections—that Stirling has provided Owens all of the information that the Statute requires, including that the affidavit "adequately explains 'how [Stirling] determined the drugs were of sufficient potency, purity, and stability to carry out their intended purpose'" and that it "provides sufficient detail for [Owens] to make an informed election of his method of execution and for [Owens] and his attorneys to 'understand whether there is a basis for challenging the constitutionality of the impending execution.'"[9]   [Doc. 1-7 (quoting

---

[9] To the extent that Owens contends that the state supreme court erred in determining—when it overruled his objection to Stirling's certification—that the Death Penalty Statute does not entitle Owens to the Additional information, that argument is barred by the *Rooker-Feldman* doctrine. "Under the *Rooker-Feldman* doctrine, a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (internal quotation marks omitted). For the *Rooker-Feldman* doctrine to apply, divesting a federal court of jurisdiction, the following four elements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of 'injuries caused by state-court judgments;' (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" *Willner v. Frey*, 243 F. App'x 744, 746 (4th Cir. 2007) (citations omitted) (alteration in original). Here, all four elements would be met as to the argument that the state supreme court erred. First, the court rejected Owens's objection to Stirling's certification and request for the Additional Information. Second, he complains of injuries from that ruling insofar as he claims he has been denied access to the Additional Information. Third, the state court judgment became final before the present case was filed. And fourth, an argument that the state supreme court erred would be inviting district court review and rejection of the state supreme court's decision. *See Wade v. Monroe Cnty. Dist. Att'y*, 800 F. App'x 114, 117–19 (3d Cir. 2020) (holding that *Rooker-Feldman* barred a prisoner's claim that

*Owens*, 904 S.E.2d at 604–05) (internal quotation marks omitted).] And Owens has been permitted to select his method of execution. [Doc. 1-8.] Accordingly, to the extent that South Carolina creates interests in the form of a right to receive particular information and to select an execution method, the State has not deprived Owens of those interests. *See Woods v. Dunn*, No. 2:20-cv-58-ECM, 2020 WL 1015763, at *12 (M.D. Ala. Mar. 2, 2020) (holding that Alabama's death penalty laws, which allow condemned prisoners to choose between death by lethal injection, electrocution, or nitrogen hypoxia, did not confer upon the prisoners the right to know, when making their election, that the Alabama Department of Corrections had not yet developed a protocol for performing nitrogen hypoxia executions; explaining that the only interest that Alabama's death penalty laws conferred was the opportunity to choose the execution method), *stay of execution denied*, 951 F.3d 1288 (11th Cir. 2020).

---

state courts had wrongly ruled that a state statute did not entitle him to post-conviction DNA testing); *Durham v. Haslam*, 528 F. App'x 559, 564 (6th Cir. 2013) ("Where the plaintiff alleges that a state court interpreted and applied a state statute to her in an unconstitutional manner, her complaint is an as-applied constitutional challenge and is prohibited under the *Rooker-Feldman* doctrine."); *Cooper v. Ramos*, 704 F.3d 772, 780–81 (9th Cir. 2012) (holding that the *Rooker-Feldman* doctrine barred the plaintiff's constitutional challenge requesting additional DNA testing pursuant to a state statute because it was at least in part a forbidden de facto appeal of a state court judgment).

   Owens argues that the *Rooker-Feldman* doctrine does not apply here because he is not in fact challenging the state supreme court's decision, but rather, is "complaining of Defendants' refusal to provide information that they believe to be prohibited from disclosure by the [Shield Law]." [Doc. 13 at 7.] The Court disagrees [*see* Doc. 1 ¶ 39 ("Defendants' *and the state supreme court's* refusal to provide the material requested implicates Plaintiffs' state-created rights to information and to choose their method of execution.")]; however, even assuming Owens is not challenging the state supreme court's decision, his argument fails to come to terms with the fact that his Due Process claim depends upon the state having created a liberty interest that he was allegedly deprived of. Regardless of the scope of the Shield Statute, if South Carolina has not created a liberty interest in his entitlement to the Additional Information, his Due Process claim based on the existence of such an interest cannot succeed.

15

It appears to the Court that, in an attempt to avoid this conclusion, Owens frames the alleged state-conferred rights as the "right to choose the least inhumane method of execution available" and the right to "understand whether there is a basis for challenging the constitutionality of the impending execution." [Doc. 5 at 6–7 (internal quotation marks omitted).]  But, in the Court's view, Owens overstates the rights the Statute gives him.  The Statute gives him the right to choose his method of execution—period, not the right to discover what is, objectively,[10] the best choice, nor the right to discover whether the execution methods are constitutional.  See Woods, 2020 WL 1015763, at *12.

Because Owens has been given all of the information that the Death Penalty Statute entitled him to and he was allowed to make the choice that the Statute entitled him to make, he cannot show any deprivation of a State-created interest.  Inasmuch as Owens has not demonstrated any likelihood of success, he is not entitled to the injunctive relief that he seeks.

---

[10] In adjudicating the state constitutionality of South Carolina's election provision, the *Owens* court noted that one benefit of being allowed to choose is that the inmate "may elect to have the State employ the method *he and his lawyers believe* will cause him the least pain."  904 S.E.2d at 608 (emphasis added).  The court noted that this ability to choose assures that "a condemned inmate in South Carolina will never be subjected to execution by a method *he contends* is more inhumane than another method."  *Id.* (emphasis added).  In this case, Owens was allowed to do both of those things.  He was allowed to choose the execution method that he and his lawyers believe is best for him, using whatever criteria he preferred, based on what was available to him.

The Court notes that Owens also argues that his pharmacy expert's affidavit supports the proposition that the Additional Information could be of critical importance to him in deciding which execution method would be expected to be the least painful and that providing the information would not significantly impair any State interest. [Doc. 5 at 8–14.]  Even assuming Owens is correct, those factors do not somehow create a *liberty interest* in Owens in receiving the information.

16

**CONCLUSION**

Wherefore, based upon the foregoing, Plaintiff Owens's motion for a temporary restraining order [Doc. 5] is DENIED.[11]

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 18, 2024
Columbia, South Carolina

---

[11] In Owens's Motion, Owens requests that the Court establish expedited briefing and hearing schedules to address the matters in that motion and in the Complaint. Because the Court concludes that Owens has not made a showing that he is likely to succeed on the merits of his claims, the Court requires no further briefing regarding Owens's Motion.