NO. 24-3

In The

# United States Court of Appeals

### For The Fourth Circuit

**FREDDIE E. OWENS,**

*Plaintiff–Appellant,*

**v.**

**BRYAN P. STIRLING, in his official capacity as the Director of the South Carolina Department of Corrections; and SOUTH CAROLINA DEPARTMENT OF CORRECTIONS,**

*Defendants–Appellees,*

**and**

**HENRY DARGAN MCMASTER, in his official capacity as Governor of the State of South Carolina,**

*Intervenor-Defendant–Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

———————

## RESPONSE TO EMERGENCY MOTION FOR ADMINISTRATIVE INJUNCTION AND INJUNCTION PENDING APPEAL

———————

Daniel C. Plyler
Austin T. Reed
SMITH | ROBINSON
2530 Devine Street
Columbia, South Carolina 29205
(803) 254-5445
Daniel.Plyler@SmithRobinsonLaw.com
Austin.Reed@SmithRobinsonLaw.com

*Counsel for Director Stirling and*
*the S.C. Department of Corrections*

Thomas A. Limehouse, Jr.
*Chief Legal Counsel*
Wm. Grayson Lambert
*Senior Litigation Counsel*
Erica W. Shedd
*Deputy Legal Counsel*
Tyra S. McBride
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov

*Counsel for Governor McMaster*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION ................................................................................... 1

STATEMENT OF THE CASE ..................................................................... 2

    A. Owens brutally murders a store clerk during a nighttime robbery ........... 2

    B. Owens elects lethal injection but still demands more information........... 3

STANDARD OF REVIEW ....................................................................... 6

ARGUMENT........................................................................................ 7

  I. Owens is not likely to prevail on the merits .................................... 7

    A. *Rooker-Feldman* bars Owens's claim ........................................7

    B. Owens's procedural due process claim cannot prevail ...........................10

      1. Owens overreads and attempts to weaponize his statutory opportunity to elect a method of execution ............................................ 11

      2. Owens only speculates about the pentobarbital ................................. 14

      3. South Carolina has a strong interest in protecting information about lethal injection drugs ........................................................ 16

  II. The remaining factors do not support a stay.................................... 21

CONCLUSION................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Baze v. Rees*,
  553 U.S. 35 (2008).................................................................. 16, 17, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................15

*Brewer v. Landrigan*,
  562 U.S. 996 (2010).........................................................................14

*Bucklew v. Precythe*,
  587 U.S. 119 (2019)......................................................... 1, 2, 21, 22

*Calderon v. Thompson*,
  523 U.S. 538 (1998).........................................................................22

*Carolina Renewal, Inc. v. S.C. Dep't of Transp.*,
  684 S.E.2d 779 (S.C. Ct. App. 2009) .................................................10

*Creech v. Tewalt*,
  94 F.4th 859 (9th Cir. 2024) ..............................................................14

*Del Webb Communities, Inc. v. Carlson*,
  817 F.3d 867 (4th Cir. 2016) ................................................................9

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005)...........................................................................9

*Grimmett v. Freeman*,
  No. 22-1844, 2022 WL 3696689 (4th Cir. Aug. 25, 2022)....................6

*Grochowski v. Virginia*,
  741 F. Supp. 1230 (W.D. Va. 1990).....................................................8

*Hampton v. Haley*,
  743 S.E.2d 258 (S.C. 2013) ...............................................................23

ii

*Hill v. McDonough*,
547 U.S. 573 (2006) ............................................................................ 22

*Hodges v. Rainey*,
533 S.E.2d 578 (S.C. 2000) ................................................................ 12

*Hooper v. Brnovich*,
56 F.4th 619 (9th Cir. 2022) ............................................................... 10

*Jackson v. Danberg*,
No. CIV. 06-300-SLR, 2011 WL 3205453 (D. Del. July 27, 2011) ....... 21

*Jordan v. Comm'r, Miss. Dep't of Corr.*,
947 F.3d 1322 (11th Cir. 2020) .......................................................... 17

*Jordan v. Hall*,
No. 3:15-CV-295, 2018 WL 1546632 (S.D. Miss. Mar. 29, 2018) ...... 18

*Marbury v. Madison*,
|5 U.S. (1 Cranch) 137 (1803) ............................................................ 22

*Martin v. Ward*,
No. 1:18-CV-4617-MLB, 2021 WL 1186749 (N.D. Ga. Mar. 30, 2021) ........... 19

*Maryland v. King*,
567 U.S. 1301 (2012) .......................................................................... 16

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................................ 11

*Moeller v. Weber*,
No. CIV 04-4200, 2013 WL 5442392 (D.S.D. Sept. 30, 2013) ........... 19

*Nelson v. Campbell*,
541 U.S. 637 (2004) ......................................................................... 2, 16

*New State Ice Co. v. Liebmann*,
285 U.S. 262 (1932) ............................................................................ 21

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................21

*Ohio v. Env't Prot. Agency*,
    144 S. Ct. 2040 (2024).................................................................6

*Oregon v. Ice*,
    555 U.S. 160 (2009)..................................................................20

*Owens v. Stirling*,
    882 S.E.2d 858 (S.C. 2023) ......................................................14

*Owens v. Stirling*,
    904 S.E.2d 580 (S.C. 2024) ............................... 3, 8, 11, 13

*Owens v. Stirling*,
    967 F.3d 396 (4th Cir. 2020) ....................................................3

*Pinckney v. Peeler*,
    862 S.E.2d 906 (S.C. 2021) ....................................................13

*Powell v. Thomas*,
    784 F. Supp. 2d 1270 (M.D. Ala. 2011) ...............................21

*Reid v. Johnson*,
    333 F. Supp. 2d 543 (E.D. Va. 2004) ...................................21

*Sells v. Livingston*,
    561 F. App'x 342 (5th Cir. 2014) ..........................................14

*Skinner v. Switzer*,
    562 U.S. 521 (2011)....................................................................9

*State v. Owens*,
    552 S.E.2d 745 (S.C. 2001) ......................................................3

*State v. Owens*,
    664 S.E.2d 80 (S.C. 2008) ........................................................3

*Va. Dep't of Corr. v. Jordan*,
  921 F.3d 180 (4th Cir. 2019) ........................................................ 14, 18

*Wellons v. Comm'r, Ga. Dep't of Corr.*,
  754 F.3d 1260 (11th Cir. 2014) ...................................................15

*Wilkinson v. Austin*,
  545 U.S. 209 (2005).....................................................................10

*Willner v. Frey*,
  243 F. App'x 744 (4th Cir. 2007) ..................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)..........................................................................15

*Wisc. Right to Life, Inc. v. Fed. Election Comm'n*,
  542 U.S. 1305 (2004)......................................................................6

*Zink v. Lombardi*,
  783 F.3d 1089 (8th Cir. 2015) ......................................................15

## Constitutional Provisions

S.C. Const. art. I, § 24............................................................................21

## Statutes

S.C. Code Ann. § 24-3-530(A) ..................................................... 1, 4, 11

S.C. Code Ann. § 24-3-530(B) ..................................................................4

S.C. Code Ann. § 24-3-580(A)(1) .............................................................4

S.C. Code Ann. § 24-3-580(A)(2) .............................................................4

S.C. Code Ann. § 24-3-580(B) ..................................................................4

S.C. Code Ann. § 24-3-580(I).................................................................4, 12

Utah Code Ann. § 64-13-27....................................................................20

**Legislative Acts**

2021 S.C. Acts No. 43............................................................... 3, 12, 13

2023 S.C. Acts No. 16...............................................................................4, 12

**Other Authorities**

Chiara Eisner, *Unmarked Cars and Secret Orders: How a Pharmacy Prepared Drugs for Texas' Executions*, NPR (July 10, 2024) ...................................... 19, 20

Jeffrey Collins, *South Carolina Sets Date for First Execution in More than 13 Years*, Associated Press (Aug. 23, 2024).................................................................3

John H. Blume & Brendan Van Winkle, *Death Penalty: Determine if Capital Punishment Has Outlived its Use*, American Constitution Society (2020)..........18

Romy Ellenbogen, *Florida's First State Execution in Three Years Renews Lethal Injection Debate*, Miami Herald (Feb. 23, 2023) ................................................20

## **INTRODUCTION**

"Last-minute stays should be the extreme exception, not the norm." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019). Nothing is remotely exceptional about Owens's latest lawsuit. He has fully litigated his direct and collateral appeals, and now South Carolina is prepared to execute him using a one-drug lethal injection protocol that not only mirrors how the federal government and other States have carried out executions in recent years but also is the one-drug protocol that Owens has admitted is "the most reliable and humane way to conduct a lethal injection." R. p. 113, No. 2022-001280 (S.C. Oct. 27, 2022). The pentobarbital that will be used for Owens's execution has been tested by the Forensic Services Lab at the S.C. Law Enforcement Division.

Yet Owens belatedly demands another delay. Electrocution is South Carolina's default execution method, but the State permits a condemned inmate to elect the firing squad or lethal injection, if those methods are available. *See* S.C. Code Ann. § 24-3-530(A). Owens has previously insisted that lethal injection by a single dose of pentobarbital is the most humane way to carry out an execution, and he already (through his power of attorney) elected that method. But now Owens contends that he needs more information about the pentobarbital "to make an informed decision" about which method to elect, despite the S.C. Supreme Court having already rejected this argument. *See* Order, No. 2024-001397 (S.C. Sept. 5,

1

2024).

Owens offers no compelling reason for the federal courts to stay his execution after the S.C. Supreme Court has rejected the same argument he makes here. Owens seeks to take the S.C. General Assembly's act of legislative grace in giving him a choice of execution methods and morph it into a weapon to delay his sentence for a brutal murder of a single mother in an early-morning convenience store robbery 25 years ago. No caselaw supports Owens's position. In fact, courts have repeatedly rejected attempts to obtain more information about execution drugs as a reason to halt scheduled executions.

"The people of [South Carolina], the surviving victims of Mr. [Owens]'s crimes, and others like them deserve better" than more delay. *Bucklew*, 587 U.S. at 149. The State has a "significant interest in enforcing its criminal judgments," *Nelson v. Campbell*, 541 U.S. 637, 650 (2004), and this Court should deny Owens's motion so that his execution may proceed.

## STATEMENT OF THE CASE

**A.    Owens brutally murders a store clerk during a nighttime robbery.**

Freddie Owens and another man robbed a convenience store at 4:00 AM on November 1, 1997, hours after trick-or-treating would have ended. The store clerk, "a single mother of three who was working as many jobs," gave the men the $37.29 in the register. But she did not know the combination to the safe. When she couldn't

open it, Owens shot her in the head, killing her instantly. *Owens v. Stirling*, 967 F.3d 396, 404 (4th Cir. 2020).

A jury convicted Owens, and the S.C. Supreme Court affirmed his conviction. *See State v. Owens*, 552 S.E.2d 745 (S.C. 2001). Between his conviction and first sentencing, Owens "killed his cellmate, stabbing and burning his eyes, choking him and stomping him." Jeffrey Collins, *South Carolina Sets Date for First Execution in More than 13 Years*, Associated Press (Aug. 23, 2024), https://tinyurl.com/9zhy2rye. The S.C. Supreme Court eventually affirmed his death sentence. *State v. Owens*, 664 S.E.2d 80 (S.C. 2008).

**B.    Owens elects lethal injection but still demands more information.**

When the S.C. Supreme Court first issued an execution notice for Owens, he (joined by other death row inmates) challenged the constitutionality of electrocution and the firing squad under state law. The S.C. Supreme Court stayed his execution, and after three years of litigation, that court ultimately rejected Owens's claims. *See Owens v. Stirling*, 904 S.E.2d 580 (S.C. 2024). The S.C. Supreme Court then issued another execution notice for Owens. *See* Execution Notice, No. 2024-001397 (S.C. Aug. 23, 2024).

As of 2021, South Carolina authorizes three methods of execution: electrocution, the firing squad, and lethal injection. *See* 2021 S.C. Acts No. 43. The default method is electrocution, but a condemned inmate may elect "firing squad or

lethal injection, if it is available at the time of election." S.C. Code Ann. § 24-3-530(A). The director of the Department of Corrections must certify for each execution which methods are available. *Id.* § 24-3-530(B).

South Carolina also has a Shield Statute, which the General Assembly passed in 2023 and enabled the Department of Corrections to obtain lethal injection drugs. *See* 2023 S.C. Acts No. 16. That law protects any entity that "manufactures" or "compounds" the "drugs . . . utilized in the execution of a death sentence" from having its identity disclosed. *Id.* § 24-3-580(A)(1). "[A]ny identifying information" about that entity "shall be confidential." *Id.* § 24-3-580(B). "[I]dentifying information" is a "broad[]" term that includes "any record or information that reveals a name, date of birth, social security number, personal identifying information, personal or business contact information, or professional qualifications." *Id.* § 24-3-580(A)(2). The General Assembly declared the Shield Statute "shall be broadly construed by the courts of this State so as to give effect to the General Assembly's intent to ensure the absolute confidentiality of the identifying information of any person or entity directly or indirectly involved in the planning or execution of a death sentence within this State." *Id.* § 24-3-580(I).

Director Stirling certified that all three methods were available for Owens's execution. *See* Aff. of Bryan P. Stirling, No. 2024-001397 (S.C. Aug. 28, 2024). He explained that the S.C. Law Enforcement Division's Forensic Services Lab tested

4

the pentobarbital that would be used if Owens elected lethal injection. That lab is "an internationally accredited forensic laboratory . . . that . . . used widely accepted testing protocols and methodologies" with testing performed by "experienced, qualified, and duly authorized personnel." Aff. of Bryan P. Stirling ¶ 10, No. 2024-001397 (S.C. Aug. 28, 2024). The testing "confirmed the concentration of the solution provided is consistent with the vial labeling of pentobarbital, 50 milligrams per milliliter, and acknowledged the substance's concentration in terms of its purity and stability." *Id.*

Owens signed a power of attorney for one of his lawyers to make his election, which the S.C. Supreme Court held state law allowed. *See* Order, No. 2024-001397 (S.C. Sept. 3, 2024). Owens's agent then elected lethal injection by a single dose of pentobarbital—the exact method Owens had insisted during the state court litigation was the most humane way to carry out an execution. *See* Notice of Election, No. 2024-001397 (S.C. Sept. 6, 2024).

Despite this information from the Director's certification, the Shield Statute, and his own election, Owens demanded to know more about the pentobarbital. *See* Objection, No. 2024-001397 (S.C. Sept. 3, 2024). He sought facts about the drug's creation, the "Beyond Use Date," actual test results, and storage conditions, supporting his request with an affidavit from the same expert on whom he relies here.

The S.C. Supreme Court rejected Owens's arguments. The certification "adequately explain[ed]" how the Director determined that the pentobarbital was sufficiently "poten[t], pur[e], and stab[le]" and provided Owens "sufficient detail" "to make an informed election." Order 1–2, No. 2024-001397 (S.C. Sept. 5, 2024).

Undeterred by his loss in the S.C. Supreme Court, Owens ran to federal court, where he asserted a procedural due process right to know more about the pentobarbital and execution team members. The district court denied Owens's preliminary injunction motion.

Owens now seeks an injunction pending appeal from this Court.

## STANDARD OF REVIEW

An injunction pending appeal is "an extraordinary remedy." *Wisc. Right to Life, Inc. v. Fed. Elec. Comm'n*, 542 U.S. 1305, 1305 (2004) (Rehnquist, C.J., in chambers). Obtaining that relief requires a party to show that he is likely to succeed on the merits, will be irreparably harmed without a stay, that a stay would not substantially injure other parties, and that the public interest supports a stay. *Ohio v. Env't Prot. Agency*, 144 S. Ct. 2040, 2052 (2024); *see also Grimmett v. Freeman*, No. 22-1844, 2022 WL 3696689 (4th Cir. Aug. 25, 2022) (applying these factors on a motion for injunction pending appeal).

# ARGUMENT

## I.   Owens is not likely to prevail on the merits.

### A.   *Rooker-Feldman* bars Owens's claim.

The S.C. Supreme Court has already held that Owens has received sufficient information to elect a method. After Director Stirling certified that lethal injection was available and how he reached that conclusion, Owens objected and demanded the same information that he requests now from the federal courts, based on the same affidavit from Dr. Almgren. *Compare* Almgren Aff., No. 2024-001397 (S.C. Sept. 3, 2024), *with* Dist. Ct. ECF No. 1-6. Even more to the point, Owens expressly invoked due process as the basis for his objection. Objection 1, 2, 4, No. 2024-001397 (S.C. Sept. 3, 2024).

The S.C. Supreme Court was unswayed by Owens's due process pleas. The court rejected his demands, concluding that the certification gave Owens "sufficient detail" based on the testing results from the S.C. Law Enforcement Division's lab "to make an informed election."* Order 2, No. 2024-001397 (S.C. Sept. 5, 2024). The Director had, in other words, sufficiently explained "the basis of his determination that the drugs are of sufficient "potency, purity, and stability" to carry

---

\* Given what Director Stirling did provide in his certification, the Court need not engage with Owens's hypotheticals about what basis a director might theoretically provide for determining that lethal injection is available. *See* Mot. 7–8. Owens's emergency motion must deal with the facts as they are, not as they might be.

out their intended purpose"—precisely what the S.C. Supreme Court said he had to do. *Owens*, 904 S.E.2d at 604.

Now running to federal court, Owens points to "the state supreme court's refusal to provide" the information he demanded *three times* as part of his procedural due process claim. Dist. Ct. ECF No. 1, at 13–16. The district court explained how all four *Rooker-Feldman* elements are met here. *See* Dist. Ct. ECF No. 19, at 14–15 n.9 (citing *Willner v. Frey*, 243 F. App'x 744, 746 (4th Cir. 2007)). Put simply, Owens raised due process in state court, lost, and, when his options in that court had run out, came to federal court citing the state supreme court's decision as the basis for his claim. That's exactly what *Rooker-Feldman* forbids.

Owens lodges several objections to the district court's conclusion, but none is persuasive. First, he says he isn't challenging a state court "judgment." Mot. 11. Owens may not be challenging the validity of his death sentence, but he is challenging its enforcement. It's just a backdoor challenge to his sentence. *See Grochowski v. Virginia*, 741 F. Supp. 1230, 1231 (W.D. Va. 1990) ("If this court enjoined the enforcement of the sentence imposed by the state court, it would essentially rule that the conviction was improper, and *Feldman* prohibits such action.").

Next Owens claims the S.C. Supreme Court did not actually rule on due process. *See* Mot. 12–13. That's an implausible interpretation of the state court's

8

decision. If due process required that Owens receive this information from Director Stirling, then the S.C. Supreme Court could not have denied his requests for it. By denying Owens's request for more information, the S.C. Supreme Court necessarily concluded that Owens's due process argument failed. Given the expedited nature of these proceedings, the S.C. Supreme Court issued only a brief order, but the only way it reached its conclusion was by rejecting Owens's due process argument that he should get more information. Due process was "inextricably intertwined" with the state court's decision. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n.1 (2005). That makes cases like *Del Webb Communities, Inc. v. Carlson* and the question of class arbitration, which was not involved in the state court proceedings, unhelpful to Owens here. *See* 817 F.3d 867, 872 (4th Cir. 2016).

Owens relatedly claims his injury stems from the Director not giving him information, rather than from the S.C. Supreme Court's decision. *See* Mot. 13–14. This argument is belied by Owens's complaint, which three times claims that "the state supreme court's refusal to provide" the information was part of his claim. Dist. Ct. ECF No. 1, at 13–16. Even if the Director first had to decide what the certification would say, and did say, the ultimate decision of whether the certification was sufficient belonged to the S.C. Supreme Court.

Finally, Owens points to *Skinner v. Switzer*, 562 U.S. 521 (2011), to claim he is challenging the law generally, not its application. *See* Mot. 14–15. There might be

9

a part of this case that fits within *Skinner*, but Owens's motion reads much more like a challenge to how that law was applied in his case than a challenge to section 24-3-530 or section 24-3-580 generally. The Ninth Circuit recently vacated a stay of an execution and dismissed a case under *Rooker-Feldman* when a plaintiff argued that a state court "should have" granted a motion and imposed an "unconstitutional barrier" on his claim. *Hooper v. Brnovich*, 56 F.4th 619, 625 (9th Cir. 2022).

Yet if somehow Owens could avoid *Rooker-Feldman*, he still has a preclusion problem. Again, if Owens were right about due process, the S.C. Supreme Court could not refused his demand for more information. Owens could have raised due process in federal court first. But he didn't. The federal courts are therefore Owens's second bite at this apple. *Cf. Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 684 S.E.2d 779, 782 (S.C. Ct. App. 2009) (collateral estoppel elements: "(1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment").

**B.    Owens's procedural due process claim cannot prevail.**

But even if Owens could get past raising his due process claim in state court first, he is not entitled to an injunction. Owens presses only his procedural due process claim here. Procedural due process is "flexible," accounting for the facts of a case. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). What process is due in any situation considers the private interest involved, the risk of an erroneous deprivation,

10

and the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Owens has not shown that he can meet any part of this test.

> **1.      Owens overreads and attempts to weaponize his statutory opportunity to elect a method of execution.**

South Carolina law gives a condemned inmate the opportunity to elect the firing squad or lethal injection, instead of electrocution, if those methods are available. *See* S.C. Code Ann. § 24-3-530(A). The S.C. Supreme Court called this "choice" an "innovation" because "a condemned inmate in South Carolina will never be subjected to execution by a method he contends is more inhumane than another method that is available." *Owens*, 904 S.E.2d at 608.

Owens takes that court's observation and runs with it, claiming some broad right to information before he can elect a method of execution. *See* Mot. 17–19. Owens is wrong about the private interest involved here. He seeks to contort an act of legislative grace into a hook for demanding far more information about execution drugs than the S.C. General Assembly contemplated him obtaining.

At least two points (in addition to what the S.C. Supreme Court has already said) confirm the district court's conclusion that "South Carolina has not created a liberty interest as broad as Owens claims." Dist. Ct. ECF No. 19, at 13. *One*, reading *Owens* in context makes clear that the S.C. Supreme Court was not suggesting that a condemned inmate was permitted to receive whatever information he wanted before electing a method. Rather, the court's point was that, with three choices of

methods, an inmate can always elect a method that he believes is less painful than another one. As the district court aptly put it, South Carolina did not give Owens "the right to discover what is, objectively, the best choice, nor the right to discover whether the execution methods are constitutional." *Id.* at 16.

*Two*, Owens's due process claim is incompatible with South Carolina's rules of statutory interpretation. Start with three rules. First, in South Carolina, "[t]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 533 S.E.2d 578, 581 (S.C. 2000). Second, "[t]he more recent and specific legislation controls if there is a conflict between two statutes." *Id.* at 583 n.3. And third, "[s]tatutes dealing with the same subject matter must be reconciled, if possible, so as to render both operative." *Id.* at 583.

Applying those rules, the General Assembly amended the methods-of-execution statute in 2021. *See* 2021 S.C. Acts No. 43. Two years later, when the Department of Corrections still could not obtain lethal injection drugs, the General Assembly enacted the Shield Statute. *See* 2023 S.C. Acts No. 16. The Shield Statute—which the General Assembly instructed should be interpreted "broadly . . . to give effect to [legislative] intent to ensure the absolute confidentiality" of those involved in executions, S.C. Code Ann. § 24-3-580(I)—is both the more recent law (2023 is later than 2021) and the more specific one (it speaks to what information may be disclosed, while section 24-3-530 provides only

12

for a right to elect). The right to elect, and thus any information that accompanies it, must therefore be read in conjunction with the Shield Statute's limitations on what information may be disclosed.

If that somehow weren't enough, the S.C. Supreme Court has made clear that the Shield Statute applies in the context of an inmate's election. When discussing the Director's certification, the court explained that the Director "must comply with the confidentiality requirements of the shield statute." *Owens*, 904 S.E.2d at 604.

Still, despite all this, assume that Owens is right that due process requires him to receive the information he seeks before he can elect a method of execution: Either the right to elect remains valid or the Shield Statute does. But not both.

In that scenario, the remedy is *not* that Owens gets the information. Instead, the remedy is that any right to elect must be severed from section 24-3-530. The General Assembly included a robust severability clause in Act 43, *see* 2021 S.C. Acts No. 43, § 2, which the S.C. Supreme Court has described as "strongly worded and evidenc[ing] strong legislative intent that the several parts of the Act be treated independently," *Pinckney v. Peeler*, 862 S.E.2d 906, 915 (S.C. 2021) (cleaned up).

A court can therefore sever the right to elect from Act 43 to fulfill the General Assembly's aim to make—and keep—lethal injection available. After all, that goal was the entire reason for enacting the Shield Statute, which was passed only after the S.C. Supreme Court had remanded the state court litigation earlier in 2023 for

13

more discovery on why the Department of Corrections had been unable to obtain lethal injection drugs. *See Owens v. Stirling*, 882 S.E.2d 858, 862–63 (S.C. 2023). The Shield Statute seeks to protect the State from the "well-known phenomenon in which drug suppliers, once exposed to pressure from activists opposed to the death penalty, refuse to supply drugs to state corrections departments." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 184 (4th Cir. 2019). This means that, if Owens is right about what due process requires, he loses the right to elect.

### 2. Owens only speculates about the pentobarbital.

Owens hypothesizes about what could be true "if" certain conditions are met or what "may" happen if other things are true. Almgren Aff. ¶¶ 7, 8, Dist. Ct. ECF No. 1-6. "[S]peculation" about a drug "cannot substitute for evidence" about it. *Brewer v. Landrigan*, 562 U.S. 996, 996 (2010). Courts have been consistent on this front. The Fifth Circuit, for example, once vacated a stay of an execution when an inmate had not received all the information he wanted about the drugs, explaining that "the case might be different" only if a drug was "never before used or unheard of" and the "efficacy or science was completely unknown." *Sells v. Livingston*, 561 F. App'x 342, 344 (5th Cir. 2014). The Ninth Circuit recently refused to stay an execution based on "arguments about the provenance, quality, and reliability of the drug" that were "purely speculative." *Creech v. Tewalt*, 94 F.4th 859, 862–63 (9th Cir. 2024). And the list goes on. *See, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1103

14

(8th Cir. 2015); *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1265–66 (11th Cir. 2014).

Owens seeks to avoid these cases by looking to the difference between his claim and the claims in those cases. But Owens has pleaded in his procedural due process claim that he "must be provided" with the information he seeks "to know whether Defendants' lethal injection procedures meet Eighth Amendment standards." Compl. ¶ 37, Dist. Ct. ECF No. 1. These cases are therefore more on-point here than Owens wants to admit. And in any event, the type of the claim aside, speculation isn't sufficient. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That bar gets higher—"likely to succeed on the merits"—for a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Although Owens says he needs more information, he only speculates that this information could change the election he has already made. *See* Mot. 19–20. The Director has certified that the S.C. Law Enforcement Division's "internationally accredited" lab "used widely accepted testing protocols and methodologies" and "experienced, qualified, and duly authorized personnel" to test the pentobarbital for its "purity and stability." Aff. of Bryan P. Stirling ¶ 10, No. 2024-001397 (S.C. Aug. 28, 2024). Owens may identify six categories of information, *see* Mot. 9–10, but nothing in the complaint, preliminary injunction motion, or Almgren affidavit casts

credible doubt on the S.C. Law Enforcement Division's testing or suggests that his execution might be botched. So, for instance, Owens hasn't alleged that the transportation or storage of the drugs is likely to change the results of the testing. *See* Mot. 21. Wanting more information does not relieve Owens from the burden of alleging sufficient facts that the information he seeks is necessary to make the election the General Assembly, through the exercise of legislative grace, gave him.

In the same way, Owens only speculates about the need for qualifications for the execution team members who will insert the IV. That other States may have experienced difficulties in specific cases (often involving inmates with complicating medical conditions, such as an Alabama inmate with cancer in 2018 or an Arizona inmate with a degenerative spinal condition in 2022) does not mean that SCDC officials will (or are likely to) have any issues here.

### 3. South Carolina has a strong interest in protecting information about lethal injection drugs.

South Carolina has a "significant interest in enforcing its criminal judgments," *Nelson*, 541 U.S. at 650, and its law generally, *cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (State suffers "irreparable injury" "[a]ny time" its law is enjoined). To protect those interests, courts should not be "transformed . . . into boards of inquiry charged with determining 'best practices' for executions." *Baze v. Rees*, 553 U.S. 35, 51 (2008) (plurality). Sanctioning that shift would result in constant new "round[s] of litigation," "embroil the courts in

16

ongoing scientific controversies beyond their expertise," and "substantially intrude on the role of state legislatures in implementing their execution procedures." *Id.* Yet that is what Owens implicitly asks this Court to do. Rather than treat procedural due process as a floor to ensure basic protections (which Owens received from Director Stirling's certification), Owens demands at least six additional categories of information. *See* Mot. 9–10. The Court should decline Owens's invitation to nudge open the door that the Supreme Court closed in *Baze*.

The State also has a strong interest in continuing to obtain lethal injection drugs for future executions (including Owens's co-plaintiffs here). Protecting the sources of these drugs is vital. "[D]isclosure of the supplier for a particular drug used by a state in executions will have predictable consequences: anti-death penalty advocates will hound the supplier of that drug until the supplier capitulates and ceases supplying the drug." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1341 (11th Cir. 2020). The Shield Statute is therefore an important tool for making lethal injection available.

The risk of disclosure isn't hypothetical. Attempts to learn more about these drugs predictably come from death row inmates in South Carolina. But they also come from other sources. For instance, a death row inmate in Idaho recently sent a subpoena to the S.C. Department of Corrections for information about its drugs and sources. *See generally Pizzuto v. Tewalt*, No. 1:21-cv-359 (D. Idaho). Examples

17

abound in other States. *See, e.g.*, *Va. Dep't of Corr.*, 921 F.3d at 194 (attempt by Mississippi inmates to obtain Virginia information). No matter what steps are taken to protect information in discovery, there remains "the inherent danger and hardship that would follow even an inadvertent disclosure." *Jordan v. Hall*, No. 3:15-CV-295, 2018 WL 1546632, at *11 (S.D. Miss. Mar. 29, 2018).

Owens tries to cast his demands as falling outside the scope of the Shield Statute, but that effort fails. *See* Mot. 21–22. For instance, an expiration or "Beyond Use Date" would likely reveal whether the pentobarbital is manufactured or compounded. Yet there are only a few manufacturers, so if the Department of Corrections did obtain manufactured pentobarbital and say as much, that would leave Owens and anti-death penalty advocates with a limited universe to determine who provided the drug to the Department. It doesn't seem a stretch to think that, if the Department did have manufactured pentobarbital and said as much, anti-death penalty advocates would rush to all pentobarbital manufacturers to have them threaten to stop selling all drugs (including those for regular medical use) to the Department unless the pentobarbital was returned. Even if the exact manufacturer is not identified, this entire scenario would make it harder for the Department to carry out its daily operations and a duly imposed death sentence. *Cf.* John H. Blume & Brendan Van Winkle, *Death Penalty: Determine if Capital Punishment Has Outlived its Use* 3, American Constitution Society (2020),

https://tinyurl.com/ym2vcbdr (calling on the incoming Biden Administration to "heavily regulate lethal injection drugs and seek to prevent their importation and travel through interstate commerce"). The same concerns arise if the Department reveals it has compounded pentobarbital, as anti-death penalty advocates could start contacting the compounding pharmacies capable of providing that drug or the producers of the bulk components. *See* Eisner, *supra* (revealing Texas's supplier).

Owens expresses dismay that South Carolina would take such a strong stance on protecting information about its lethal injection drugs. He says other States (such as Texas, Utah, and Florida) have disclosed more information but have still been able to carry out executions and that some courts have required disclosure. *See* Mot. 22–25.

As for the cases, neither helps him. The plaintiff in *Martin v. Ward* based his requests for more information on an alleged "documented pattern of maladministration that has led to a surprisingly wide range of times to effectuate death that are inconsistent with the application of a uniform protocol," with either a drug that wasn't sufficiently potent or that was improperly administered. No. 1:18-CV-4617-MLB, 2021 WL 1186749, at *1 (N.D. Ga. Mar. 30, 2021). Owens has not (and cannot) allege such a pattern. And *Moeller v. Weber* involved information unsealed, subject to South Dakota's shield law, after an execution. No. CIV 04-4200, 2013 WL 5442392 (D.S.D. Sept. 30, 2013).

19

Three responses dispose of the rest of Owens's argument. *First*, and as Owens makes clear, those other States have had different experiences with lethal injection drugs than South Carolina has. The struggle that South Carolina has had compared to other States in obtaining drugs for lethal injection makes South Carolina understandably more intent on protecting its ability to secure those drugs moving forward.

*Second*, other States' approaches may not work. About two months ago, NPR publicly identified Texas's drug supplier. *See* Chiara Eisner, *Unmarked Cars and Secret Orders: How a Pharmacy Prepared Drugs for Texas' Executions*, NPR (July 10, 2024), https://tinyurl.com/3ypzp2ek. Utah just adopted a more robust shield law. *See* Utah Code Ann. § 64-13-27(3)–(4) (enacted in 2024). And Florida is now using a three-drug protocol with etomidate, despite having used pentobarbital in the past. *See* Romy Ellenbogen, *Florida's First State Execution in Three Years Renews Lethal Injection Debate*, Miami Herald (Feb. 23, 2023), https://tinyurl.com/5dvrbr4c. What's more, these States' willingness to disclose more information does not shield them from the inevitable lawsuits that death row inmates bring as their execution dates approach.

And *third*, all States do not need the same approach. The Supreme Court has "long recognized the role of the States as laboratories for devising solutions to difficult legal problems." *Oregon v. Ice*, 555 U.S. 160, 171 (2009) (citing *New State*

*Ice Co. v. Liebmann,* 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting)). Just because some States disclose more information does not mean South Carolina must too.

## II.    The remaining factors do not support a stay.

As for irreparable harm, not all courts agree that a condemned inmate necessarily faces such harm without an injunction. As one court reasoned, "[i]rreparable harm, in the context of the death penalty, cannot mean the fact of death" because that "would make analysis of this factor meaningless." *Jackson v. Danberg*, No. CIV. 06-300-SLR, 2011 WL 3205453, at *3 (D. Del. July 27, 2011), *aff'd,* 656 F.3d 157 (3d Cir. 2011); *see also, e.g.*, *Powell v. Thomas*, 784 F. Supp. 2d 1270, 1283 (M.D. Ala. 2011); *Reid v. Johnson*, 333 F. Supp. 2d 543, 550 (E.D. Va. 2004). Instead, a court must consider whether the inmate would suffer some constitutional wrong when his death sentence was carried out. *Jackson*, 2011 WL 3205453, at *3. That logic makes sense, but the Court need not stake out a position on this question because Owens cannot meet the other factors.

Taking the harm to the State and the public interest together, *see Nken v. Holder*, 556 U.S. 418, 435 (2009), "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence," *Bucklew*, 587 U.S. at 149; *see also* S.C. Const. art. I, § 24 (victim's bill of rights). Too often, those interests are "frustrated" by "delay through lawsuit after lawsuit." *Bucklew*, 587 U.S.

21

at 149. Owens is no exception: Since 2021, he's filed multiple cases in state and federal court raising various challenges to his execution. Presumably, he'll always have one more challenge, if the courts continue to grant him stays. "The people of [South Carolina], the surviving victims of Mr. [Owens]'s crimes, and others like them deserve better." *Id.* Indeed, there is even a "moral dimension" to the State's interest in the finality that comes with carrying out Owens's sentence. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

Owens also ignores the State's separate interest in keeping federal courts from interfering with its criminal judgments. To be sure, federal courts "say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). But in doing so, they "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "The proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously. Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay." *Bucklew*, 587 U.S. at 150. From this role flows the common-sense conclusion that "[l]ast-minute stays should be the extreme exception, not the norm." *Id.* In other words, courts must guard against the "Groundhog Day" that is capital litigation, *Glossip v. Gross*, 576 U.S. 863, 893 (2015) (Scalia, J., concurring), so that duly imposed, fully appealed judgments can be carried out and the "seemingly

endless proceedings" can end, *Baze*, 553 U.S. at 69 (Alito, J., concurring).

Owens also attacks the South Carolina General Assembly's policy judgment in enacting the Shield Statute, calling the law "some of the most restrictive" "secrecy policies" in the country. Mot. 27. Under the South Carolina Constitution, "the General Assembly has plenary power over all legislative matters unless limited by some constitutional provision." *Hampton v. Haley*, 743 S.E.2d 258, 262 (S.C. 2013). No one disputes that the public interest favors constitutionally compliant executions, but nothing supports Owens's speculative suggestion that his execution may fall short of that standard if he does not get more information. The S.C. Supreme Court characterized what the Department of Corrections did—testing by the S.C. Law Enforcement Division—as the upper "extreme[]" of what the Director's certification could provide as a basis for his determination that lethal injection was available. *Owens*, 904 S.E.2d at 605. With that basis, the S.C. Supreme Court explained, it "doubt[ed] there could be any legitimate legal basis on which to mount a challenge" to the certification. *Id.* So the S.C. Supreme Court—a court which previously stayed Owens's execution to allow him to pursue his claims—has already rejected Owens's argument on this point. Owens may disagree with South Carolina's Shield Statute, but South Carolina is where Owens chose to commit his crime.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Owens's Emergency Motion for Administrative Injunction and Injunction Pending Appeal.

Respectfully Submitted,

s/Wm. Grayson Lambert
Thomas A. Limehouse, Jr.
*Chief Legal Counsel*
Wm. Grayson Lambert
*Senior Litigation Counsel*
Erica W. Shedd
*Deputy Legal Counsel*
Tyra S. McBride
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR

Daniel C. Plyler
Austin T. Reed
SMITH | ROBINSON
2530 Devine Street
Columbia, SC 29205
(803) 254-5445
Daniel.Plyler@SmithRobinsonLaw.com
Austin.Reed@SmithRobinsonLaw.com

*Counsel for Director Stirling and*
*the S.C. Department of Corrections*

South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov

*Counsel for Governor McMaster*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A), 32(a)(5), and 32(g)(1) and the Court's order granting more additional words, *see* Dkt. No. 19, I certify that this motion has 5,609 words and was prepared using Times New Roman, 14-point font.

s/Wm. Grayson Lambert

## **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 19th day of September, 2024, I caused this

*Response to Emergency Motion for Administrative Injunction and Injunction*

*Pending Appeal* to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to all counsel of record.

s/Wm. Grayson Lambert