UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
No. 24-3
(District Court No. 3:24-cv-5072-JDA)

| | |
|---|---|
| FREDDIE EUGENE OWENS | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| BRYAN P. STIRLING, in his official capacity as the Director of the South Carolina Department of Corrections, | ) ) ) ) |
| | ) |
| SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, | ) ) |
| | ) |
| Defendants-Appellees, | ) |
| | ) |
| and | ) |
| | ) |
| HENRY DARGAN McMASTER, in his official capacity as Governor of the State of South Carolina, | ) ) ) |
| | ) |
| Intervenor-Defendant-Appellee. | ) |
| | ) |

**CAPITAL CASE**

Execution of Appellant Owens scheduled for
<u>September 20, 2024, 6 p.m.</u>

**PLAINTIFF-APPELLANT OWENS'S REPLY IN SUPPORT OF
EMERGENCY MOTION FOR INJUNCTION**

**I.    Defendants have failed to dislodge Owens's showing that he has a state-created liberty interest, and is entitled to procedural due process protections.**

Defendants' arguments on the question of whether state law confers a liberty interest are imaginative, but do not withstand scrutiny. Defendants first construct a straw man, asserting that Owens has asked "to receive whatever information he want[s] before electing a method." Doc.

1

20, p. 19. That is not remotely what Owens seeks. What Owens wants is what the state court promised in the *Owens* decision: an explanation with "sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for [bringing an Eighth Amendment challenge]" and an explanation of "how [the director] determined the drugs were of sufficient 'potency, purity, and stability' to carry out their intended purpose." 904 S.E.2d at 604-05. That is not what Owens received. As Dr. Almgren's uncontested affidavit explains, there is not sufficient information provided to assess a potential Eighth Amendment claim. Nor has Director Stirling explained how he determined the drugs were sufficient other than to say, "trust me, I asked the state lab, and they are." That cannot be deemed a meaningful fulfillment of the state court's promise in *Owens*.

Defendants next proceed to a misplaced discussion of South Carolina statutory interpretation. Doc. 19, pp. 20-21. It's misplaced for two reasons. The first is that there is no reason for this Court to construe the state certification statute; the state supreme court already did that in *Owens*, and explained what the statute promised. Second, Defendants reach the strange conclusion that "[e]ither the right to elect remains valid or the Shield Statute does. But not both." Doc. 20, p. 21. Yet Defendants totally ignore the fact that none of the drug-related information that Owens has asked for violates the terms of the secrecy statute, and Owens has affirmatively offered to enter into a consent protective order limiting further disclosure. The incompatibility that Defendants assert is nothing more than a figment of their imagination.

Defendants' next salvo is to claim that any alleged liberty interests have been satisfied because of Director Stirling's assurance that the pentobarbital has been tested and approved by the S.C. Law Enforcement Forensic Lab ("SLED"), as if that were some kind of ironclad determination that cannot be subject to any degree of scrutiny. Owens is not suggesting bad faith

2

or misconduct on the part of the Lab, but there is a reason why the adage "trust but verify" has withstood the test of time. State crime labs are no stranger to errors.[1] The Court should resist Defendants' argument that the South Carolina Lab's role in the certification process should somehow be exempt from procedural due process scrutiny simply because they say—without providing evidence beyond their word—that the drugs will work as intended.

In asserting that Owens (and this Court) must trust Director Stirling's assurances, Defendants claim that Owens has done nothing more than "speculate" that his execution might be botched or that he might change his election if he knew more. Doc. 20, pp. 23-24. Defendants' assertions show just how limited the information is that the Director provided Owens. All Owens knows is the name of the drug and that it was somehow tested by SLED. Owens does not know if SLED used the proper methodology, what the testing results showed, when the drug will expire, or if the Department of Corrections is continuing to store the drugs appropriately. This impedes Owens's ability to point to specific concerns about the drug, to determine (with the assistance of an expert) whether the drugs are likely to work as intended, or to determine whether they are likely to cause a botched execution. That is exactly the problem raised in his complaint. Without more information, he was unable either to make an informed election or demonstrate the probability of a botched execution.[2] Defendants would have this

---

[1] Just a few examples should suffice. In March 2024, the Mecklenburg County NC District Attorney identified irregularities in the county lab's testing of biological evidence. In 2010, an Attorney General commissioned report revealed systemic problems in the NC crime lab spanning nearly two decades. Also this year, a Colorado Bureau of Investigation report found misconduct by an analyst that affected more than 1,000 criminal cases. In 2009, a sweeping report from the National Academy of Sciences revealed that the majority of criminal forensic techniques had not undergone sufficient testing to justify their claims of reliability.

[2] The District Court properly found that Owens's election, which was required by statute 14 days before his execution, does not moot his claim. Doc. 19, at 12 n.7 (citing S.C. Code § 24-3-530(A), (C)). As the district court recognized, if Owens's execution is stayed, he will be entitled

3

Court create a Catch-22 where a plaintiff cannot seek additional information without proving the information (which he does not have) shows there will be a botched execution.

Defendants make a passing attempt to justify the Director's withholding of information to promote the state's "interest in continuing to obtain legal injection drugs for future executions." Doc. 20, p. 17-18. They assert that, by giving Owens any additional information, he would somehow divine the supplier, which he could share with others who could pressure the supplier to stop providing the drugs to the Department of Corrections. *Id.* Notably, Defendants make no attempt to explain how providing the testing methodology and results, or the drugs' current storage conditions, would provide any information about the supplier of the drugs. *See id.* That is because they cannot. Information about the current testing and storage conditions has no link to the supplier and tells Owens nothing about where the drugs came from, though it would tell him more about the quality, purity, and potency of the drugs, as he has a right to under the execution method statute. *See Owens*, 904 S.E.2d at 605. Moreover, Defendants' arguments in this respect are premised on assumptions of bad faith on the part of undersigned counsel, or a worry that counsel would disclose drug-related information beyond the bounds established by a protective order. Yet Defendants offer the Court no reason to make such an assumption, as none exists.

Defendants insist that Owens would be able to determine the suppliers of the drugs if it were to provide the Beyond Use Date or the Expiration date, which they say will reveal whether the drug was manufactured or compounded. Doc. 20, p. 26. This falls well short of "identifying information."

---

to a new election prior to which he could be provided with the additional information he requests. *Id.*

Defendants' protestations should not obscure that the requested information goes to one of the most basic–the most essential–facts about the drugs: when they stop being effective. Without this information, it is frankly impossible to know whether the drug will function as intended tomorrow night. Perhaps Director Stirling could provide documentation of the date on which the drugs stop being effective without disclosing whether that date is a Beyond Use Date or an expiration date. Alternatively, the date information could be provided under a protective order. Regardless, this information is simply too critical to deny on the ground that it might identify one category of supplier over another. In any event, this should be a matter for the district court to determine on remand, when it finds facts relating to the procedural due process analysis.

Because none of the information requested by Owens violates the secrecy statute, there is no need to determine whether it or the execution methods statute controls. Owens can be provided with sufficient information to satisfy due process and allow him to make an informed election all while the Director complies with the secrecy statute, and while the State protects its interest in retaining the ability to conduct executions.

**II.    Defendants' alternative arguments fail; *Rooker-Feldman* does not apply, and Owens cannot be precluded from litigating that which he did not raise in state court, and that which the state court did not decide.**

Owens has argued, in part, that *Rooker-Feldman* does not apply because he is not challenging a state court judgment. Defendants push back by contending that "Owens may not be challenging the validity of his death sentence, but he is challenging its enforcement. It's just a backdoor challenge to his sentence." Doc. 20, p. 16. But the U.S. Supreme Court has rejected this view. In *Nance v. Ward*, 597 U.S. 159, 168-69, n. 5 (2022), the Court reaffirmed the view it expressed over a decade earlier in two separate 2006 decisions, that a challenge to execution

5

procedures is properly brought as a § 1983 suit because "granting relief [would not] necessarily imply the invalidity of a conviction or sentence." Thus, in *Hill v. McDonough*, 547 U.S. 573, 580 (2006), the execution method lawsuit was allowed to proceed because the action, even "if successful would not necessarily prevent the State from executing [Hill] by lethal injection." The same is true of Owens's claims here. As such, there is nothing "backdoor" about Owens's claims, as Defendants allege.

Defendants' remaining rejoinders to Owens's *Rooker-Feldman* arguments fail to address Owens's fundamental point: the jurisdictional doctrine is inapplicable because Owens's suit is not a challenge to an adverse ruling of the South Carolina Supreme Court that is specific to Owens. It is a challenge to the S.C. Code § 24-3-530(B), which Director Stirling construed, and then the state court validated, in such a way to allow Director Stirling to undertake a certification process that violates Owens's due process rights. That is why *Rooker-Feldman* does not apply. The subject of this lawsuit is not a state court ruling about Owens himself, but a "statute . . . authoritatively construed" by Stirling and then acquiesced to by the South Carolina Supreme Court. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011); *see also Reed v. Goertz*, 995 F.3d 425, 430 (5th Cir. 2021) (holding *Rooker-Feldman* inapplicable even where Reed challenged a statute on its face, as well as the statute "as interpreted, construed, and applied by the state court.") (internal quotes omitted).[3]

Finally, Defendants' cursory preclusion arguments can be disposed of as quickly as they were raised. *See* Doc. 20, p. 18. Issue preclusion only applies when, among other requirements, "the issue or fact is identical to the one previously litigated" and "the issue or fact was actually

---

[3] *Reed v. Goertz*, 598 U.S. 230, 234-35 (2023), reversed on other grounds, but affirmed this aspect of the Fifth Circuit's ruling.

6

resolved in the prior proceeding." *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004). Here, neither hold true. As Owens already explained in his initial motion, there is no way Defendants can show that the generalized due process reference that was proffered in state court is identical to the far more specific procedural due process claim on which Owens currently seeks review. And even if it was raised, it was neither actually resolved by the state court nor essential to the court's decision. For starters, the state supreme court said in *Owens*, when discussing certification, that there was "a Due Process Clause component to our analysis . . . but the point of law on which we primarily rely is the text of subsection 24-3-530(B) itself." 904 S.E.2d at 604. The court then stuck with its solely statutory approach when it denied Owens's objection to the certification on factual and statutory grounds alone, making no mention of due process. It's hard to imagine a clearer example of an issue that was not "actually resolved" than one that the state court said it would not reach, and then kept its promise in a subsequent order by declining to address it in any fashion. As such, Defendants' assertion of preclusion fails.

## **CONCLUSION**

Although this case does involve complex and important questions of law, the Court should not lose sight of the bigger picture. Owens was put in the position of having to choose his method of execution based solely on Director Stirling's and the state crime lab's word that the execution drugs were tested and approved; no confirmatory documents were provided. Owens then attempted to remedy this dearth of information in a way that accounted for the State's interests, by seeking drug information not expressly foreclosed by the secrecy statute and offering to abide by a non-disclosure protective order. In short, Owens has made every effort to be reasonable and mindful of concerns about undue delay, while also protecting his own important interest in being able to choose how he will die with the benefit of the most basic

7

information. This careful balancing is exactly how procedural due process should work, and why Owens's claim is likely to succeed on the merits. An emergency injunction should be issued in these circumstances.[4]

        Respectfully submitted,

        */s/ Gabrielle Amber Pittman*
        Gabrielle Amber Pittman
        Deputy Chief
        Capital Habeas Unit for the Fourth Circuit
        G_Amber_Pittman@fd.org

        David Weiss
        Assistant Federal Public Defender
        Capital Habeas Unit for the Fourth Circuit
        David_C_Weiss@fd.org

        Federal Public Defender
        for the Western District of North Carolina
        129 West Trade Street, Suite 300
        Charlotte, NC 28202
        (704) 688-6946

        */s/ Lindsey S. Vann*
        Lindsey S. Vann
        JUSTICE 360
        900 Elmwood Avenue, Suite 200
        Columbia, SC 29201
        Lindsey@justice360sc.org

        */s/ Joshua Snow Kendrick*
        Joshua Snow Kendrick
        KENDRICK & LEONARD, P.C.

---

[4] Although Owens's guilt is not germane to the issues before the Court, Defendants raise it in their brief as an implicit basis for denying relief, *see* Doc. 20, pp. 10-11, and so Owens feels compelled to respond. Over the course of the past three weeks, Owens has submitted to the state supreme court two affidavits from his co-defendant recanting his prior testimony. In the affidavits, the co-defendant states, under penalty of perjury, that at trial the prosecution offered him a deal for his testimony that was concealed from the defense; he further states that Owens was not involved in the murder and not present in the convenience store at the time of the offense. These statements vindicate Owens's long held position that he is innocent of the murder of Irene Graves. *See* Affidavits filed in *State v. Owens*, No. 2024-001397 on August 30 and September 18, 2024.

P.O. Box 6938
Greenville, SC 29606
Josh@kendrickleonard.com

COUNSEL FOR PLAINTIFF OWENS

September 19, 2024

9

## CERTIFICATE OF COMPLIANCE AND SERVICE

The foregoing document complies with the Court's word limit for replies to motions.

This document has been served upon counsel of record through the CM/ECF filing system.

September 19, 2021.

/s/ Gabrielle Amber Pittman
Gabrielle Amber Pittman